(November 2, 1916.)

NORTHWEST LIGHT AND WATER COMPANY, a Corporation, Plaintiff, v. MOSES ALEXANDER, Governor, GEORGE R. BARKER, Secretary of State, JOSEPH H. PETERSON, Attorney General, FRED L. HUSTON, State Auditor, and JOHN W. EAGLESON, State Treasurer, as the STATE BOARD OF EQUALIZATION, OF THE STATE OF IDAHO, Defendants.

[160 Pac. 1106.]

WRIT OF REVIEW—DISCRETION OF CONSTITUTIONAL OFFICERS AND BOARDS —FINDINGS OF PUBLIC UTILITIES COMMISSION AS EVIDENCE BEFORE STATE BOARD OF EQUALIZATION—BASIS OF VALUATION—APPEAL.

1. Where state elective officers are invested with a certain discretion involving the exercise of judgment in the performance of their official duties, courts have no jurisdiction by writ of review to interfere with the exercise of such discretion.

2. The State Board of. Equalization is a constitutional board, clothed by statute with *quasi*-judicial functions with regard to the assessment of certain classes of property. It is required to value and assess the properties of public utilities, and is given the exclusive power to do so. It has the right to exercise a fair discretion in using its judgment as to the valuation of such property, and when it has once acted, and there is no fraud or abuse of discretion shown in its judgment, its action is not subject to review by the courts.

3. Under our statute (sec. 66, c. 61, 1913 Sess. Laws, pp. 290, 291) it is provided that the findings of the Public Utilities Com-

mission with regard to the valuation of property "shall be admissible in evidence in any action, proceeding or hearing, before the commission or any court, in which the commission, the state," etc., may be interested. This provision has no application to the State Board of Equalization, as that board is not a court.

4. Under the law of this state, conferring a limited jurisdiction upon the Public Utilities Commission for the purpose of placing a valuation upon all property used or useful in conducting the business of public utilities, there is no provision, either by express terms or by implication, to the effect that the findings as to value made by that commission shall be binding and conclusive on the State Board of Equalization, but upon a hearing had before said board upon application made for the reduction of the assessment of a public utility for purposes of taxation, such findings are admissible in evidence, and may be regarded by said board as *prima facie* just, reasonable and correct.

5. The basis of valuation for the purposes of taxation and for rate-making purposes are not necessarily identical, and the record in this case shows as a matter of fact that the commission, in valuing the property of the plaintiff for rate-making purposes, did not take into consideration certain property which was assessed by the State Board of Equalization for purposes of taxation.

6. If the value of plaintiff's property, as found by the Public Utilities Commission, was not in fact its cash value, either for rate-making purposes or for purposes of taxation, an appeal is provided by statute from the findings of said commission.

[As to questions reviewable upon writ of review, see note in 40 Am. St. 29.]

Original application for a writ of review. Writ quashed and proceedings dismissed.

J. F. Ailshie and J. Ward Arney, for Plaintiff.

Under the constitutional and statutory provisions and the decided law of this state, the writ of *certiorari* is the proper mode of appeal from the action of this board. (*Orr v. State Board of Equalization*, 3 Ida. 194, 28 Pac. 416.)

"The State Board of Equalization, by the seeming mandatory language of the Public Service Commission law . . . . declaring the conclusive effect of a finding of value of corporate property by the Public Service Commission, is not de-

prived of the power to equalize property of a railroad after such finding, with other property in the state, even by finally reducing such value." (*Spokane & I. E. R. R. Co. v. Spokane County,* 75 Wash. 72, 134 Pac. 689.)

The contention we make would result in a uniform valuation of public utilities at their full cash value. Valuation for taxation should not exceed valuation for rate-making.

In this case we are confronted with the extraordinary situation that we are only permitted to earn interest on our investment upon a valuation of $107,500 and are taxed at a valuation of $135,000. (*State v. Clausen,* 63 Wash. 535, 116 Pac. 7, 11.)

The value of the property is the basis of taxation, and that value is dependent upon the use to which the property is put and its benefit to its owner. (*Cleveland C. C. & St. P. R. Co. v. Backus,* 154 U. S. 439, 14 Sup. Ct. 1122, 38 L. ed. 1046.)

J. H. Peterson, Atty. Genl., D. A. Dunning and Herbert Wing, Assts., for Defendants.

The board had jurisdiction to make such order. That is the only question before us for determination. Mere irregularity, if such exists, in the exercise of such jurisdiction cannot be reviewed in this proceeding. (*McConnell v. State Board etc.,* 11 Ida. 652, 83 Pac. 494; *Murphy v. Board of Equalization,* 6 Ida. 745, 59 Pac. 715; *Hannibal & St. Joe R. R. Co. v. State Board,* 64 Mo. 294.)

If plaintiff's position is correct, then the action of the State Board of Equalization in assessing a power plant becomes purely clerical. (*Blomquist v. Board of County Commrs.,* 25 Ida. 284, 137 Pac. 174.)

Under the constitution, assessments for taxation must be made by elective and not appointive officers. (Cooley on Taxation, 3d ed., p. 778.)

BUDGE, J.—This is an original application, brought against the State Board of Equalization, for a writ of review, requiring said board to certify to this court for review all of their proceedings had and done with reference to the

assessment and equalization of the property of the plaintiff corporation.

The allegations in the complaint, briefly stated, are as follows: The plaintiff is a corporation organized under the laws of the state of Nevada; it has complied with the constitution and laws of this state; it is doing, and is entitled to do, business in this state; it is the owner of an electric light and power plant and electric current transmission lines located in Shoshone county, where it supplies light and power to the city of Wallace and its inhabitants. During the year 1915, upon the application of the mayor of the city of Wallace to the Public Utilities Commission, in which it was alleged that the plaintiff corporation was charging unjust and unreasonable rates for its electricity, a hearing was ordered to be had before such commission, whereupon evidence was introduced by both of the parties to said proceeding and submitted to the commission. Thereafter the value of plaintiff's property, used and useful in furnishing light and power to the city of Wallace and its inhabitants, was found and fixed by said commission at $107,500 for rate-making purposes. The commission thereupon established new rates to be charged by plaintiff company, which rates it required to be put into operation and effect on the first day of December, 1915. The plaintiff corporation had acquired no additional property and had made no improvements upon, or extensions of, its property since the hearing had before the Public Utilities Commission and prior to the second Monday in January, 1916; and alleges that on the convening of the defendant board as a State Board of Equalization the actual cash value of its property was $107,500, as found by the Public Utilities Commission. It further appears that plaintiff's property was assessed by the State Board of Equalization for the year 1915, at $180,000. For the purpose of having its property assessed by the State Board of Equalization at the same valuation as found by the Public Utilities Commission, plaintiff corporation, by its counsel, appeared before the State Board of Equalization on August 26, 1916, to make application for a reduction of the valuation of its property to the amount

found by the Public Utilities Commission, and in support of its application it introduced the findings and order made thereon by the Public Utilities Commission, wherein the valuation of its property for rate-making purposes was found and the new schedule of rates fixed by the commission; and two certificates by its secretary, one showing plaintiff's net earnings for the first six months under the new rate schedule fixed by the Public Utilities Commission, and the other showing in detail the items of property making up the valuation found by the Public Utilities Commission; which, together with the reports made by plaintiff to said board upon blanks furnished to plaintiff by the secretary of said board, and a report made to said board in the year 1914, by the now defunct tax commission, was the sole and only proof and evidence before said State Board of Equalization; and it is alleged that said board at the conclusion of the hearing, in violation of its power, authority and jurisdiction, arbitrarily assessed plaintiff's property for the sum of $135,000, and erroneously, arbitrarily and contrary to the true facts did value the said property for the purpose of taxation at said sum. Plaintiff alleges that it has no right of appeal from the action of said board, nor any plain, speedy and adequate remedy at law, and that it will suffer great and irreparable injury and damage if the action of said board is not reviewed, vacated and set aside. Wherefore the plaintiff prayed that a writ of review issue out of this court, directing and requiring the defendant board to certify up to this court the record of its proceedings that the same might be examined and reviewed, vacated and set aside, and that the actual cash value of its property be entered upon the proper assessment and tax rolls, in all respects the same as if it had been so entered by the defendant board at the time of said hearing.

Thereupon an alternative writ of review was issued, directing the defendant board to certify to this court on September 20, 1916, a transcript of the record and proceedings had by it touching the matter of the assessment of plaintiff's property.

To the complaint of the plaintiff, the State Board of Equalization appeared and filed its motion to quash and set aside the writ of review theretofore issued, upon the ground and for the reason that the petition upon which it was based did not state facts sufficient to entitle the plaintiff corporation to the relief therein demanded, or to any relief as against the supposed grievances in said writ and petition averred. At the same time the defendant board, by its secretary, duly made its return to the writ, wherein it set forth, *inter alia,* that on August 26, 1916, all members of said State Board of Equalization being present and counsel appearing for the plaintiff corporation, it was moved by the treasurer of said board to reduce the assessment upon the property of the plaintiff company 25 per cent, which motion was carried; that the assessment of said Northwest Light and Water Company for the year 1915 was $180,000; that by virtue of the 25 per cent reduction for the year 1916, as fixed and determined by said State Board of Equalization, as hereinbefore stated, the assessment of the property was fixed at $135,000; and that, in assessing plaintiff's property, the board had before it the papers referred to in plaintiff's complaint herein as exhibits "A" and "B"; the annual report made to the board by plaintiff on June 21, 1916 (which report is herewith certified up to this honorable court and marked defendant's exhibit "A" and hereto attached), and a report made to said board in 1914 by the now defunct tax commission, in which the value of said property was fixed at $180,000.

It appears that plaintiff's contention is that the actual value of its property is $107,500, as found by the Public Utilities Commission; that it has no other or greater value for taxation purposes; that the State Board of Equalization, in fixing the value of plaintiff's property at $135,000, did so in violation of its power, authority and jurisdiction; and that said action of the State Board of Equalization, in so far as it increased the actual value of plaintiff's property from $107,500 to $135,000, was in excess of its jurisdiction and void. In other words, it is contended that when the state, through one instrumentality, has conducted an exhaustive

inquiry into the valuation of the operating plant of a public utility for the purpose of regulating the rates to be charged thereby, and has fixed a valuation which binds the public utility in its charges and rates to consumers, such finding or decree fixes the maximum valuation which the state can place upon that utility for the purpose of taxation.

The first question for our determination is raised upon the motion to quash the writ. If the State Board of Equalization had jurisdiction to assess the property of the plaintiff, and in so doing was within that jurisdiction, under the provisions of sections 4962 and 4968, Rev. Codes, the writ will not lie.

Sec. 4962, *supra,* provides that: "A writ of review may be granted by any court, . . . . when an inferior tribunal, board or officer exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy."

Sec. 4968, *supra,* provides that: "The review upon this writ cannot be extended further than to determine whether the inferior tribunal, board or officer has regularly pursued the authority of such tribunal, board or officer."

In view of the provisions of article 7, section 12, of the state constitution, and sec. 86, c. 58, 1913 Sess. Laws, p. 199, it cannot be successfully contended that the State Board of Equalization is not the proper tribunal to assess the property of the plaintiff corporation for taxation.

Sec. 12 of art. 7, *supra,* provides that: "There shall be a State Board of Equalization, consisting of the Governor, Secretary of State, Attorney General, State Auditor, and State Treasurer, whose duties shall be prescribed by law. . . . . "

Sec. 86, c. 58, 1913 Sess. Laws, *supra,* provides: "The operating property of all railroads, telegraph, telephone and electric current transmission lines, and the franchises of all persons owning or operating as lessees, or constructing any telegraph, telephone or electric current transmission lines, or railroads, wholly or partly within this state, shall be assessed for taxation for state, county, city, town, village, school dis-

trict, and other purposes exclusively by the State Board of Equalization.''

We are limited in our inquiry in determining the question of jurisdiction of the State Board of Equalization by the record sent up to this court in response to the alternative writ of review served upon the State Board of Equalization, and should that record disclose the fact that the board, having jurisdiction, did not exceed its jurisdiction in assessing plaintiff's property, we are not permitted to go further. (*McConnell v. State Board of Equalization,* 11 Ida. 652, 83 Pac. 494; *Murphy v. Board of Equalization,* 6 Ida. 745, 59 Pac. 715; *Hannibal & St. Joe R. R. Co. v. State Board of Equalization,* 64 Mo. 294.)

It will be remembered that plaintiff made a part of its complaint exhibit ''A,'' the findings made by the Public Utilities Commission from the evidence introduced upon the hearing had before said commission on October 17, 1915, in the city of Wallace. The commission in its findings, among other things, found the value of the property of the plaintiff corporation ''both tangible and intangible, used and useful in the business of furnishing electric energy to the city of Wallace and the inhabitants thereof on the 14th day of May, 1915, as the sum of $107,500,'' and expressly enumerated and eliminated from its consideration other property owned by the plaintiff of approximately the value of $60,000, which in their opinion was not used or useful in the business of furnishing electric energy. In other words, the Public Utilities Commission in fixing the actual value of the property of the plaintiff company took into consideration only such property as in their opinion was used or useful in the operation of the plaintiff's power plant and distributing system, and found the value of such property to be $107,500.

It is therefore quite evident from the findings of the Public Utilities Commission that, in fixing the value of plaintiff's property, it did not take into consideration the same property as did the State Board of Equalization. That being true, the findings of the Public Utilities Commission were admissible before the State Board of Equalization only as an

evidentiary fact tending to prove the value of the property taken into consideration by the board.

It is contended by counsel for plaintiff that, in reaching a determination as to the value of the property as found by it, the Public Utilities Commission proceeded in a judicial capacity, and that the resultant findings are conclusive in the absence of proof of subsequent additions to the plant and operating property of the public utility valued, inasmuch as the legislature in creating the Public Utilities Commission expressly provided that " . . . . the findings and conclusions of the commission on questions of fact shall be regarded as *prima facie* just, reasonable and correct. Such questions of fact shall include ultimate facts and the findings and conclusions of the commission on reasonableness and discrimination." (1913 Sess. Laws, sec. 63a, c. 61, p. 286.) And touching the judicial character of the proceedings before the commission, and their judicial finality, the legislature provided that " . . . . the findings of the commission so made and filed, when properly certified under the seal of the commission, shall be admissible in evidence in any action, proceeding or hearing before the commission or any court, in which the commission, the state or any officer, department or institution thereof, or any county, city and county, municipality, or other body politic, and the public utility affected, may be interested, whether arising under the provisions of this act or otherwise, and such findings when so introduced shall be *prima facie* evidence of the facts therein stated as to the date therein stated, under conditions then existing, and such facts can only be controverted by showing a subsequent change in conditions bearing upon the facts therein determined." (1913 Sess. Laws, sec. 66, c. 61, pp. 290–291.)

It is insisted that the foregoing statutory provisions provide for findings to be made by the Public Utilities Commission of the actual cash value of public utilities, and that such findings are conclusive upon the State Board of Equalization in determining the value of property of public utilities for the purpose of taxation.

In this connection we might call attention to the fact that the statutes of this state confer a limited jurisdiction upon the Public Utilities Commission over certain kinds and classes of property for a specific purpose, namely, to place a valuation upon all property, tangible and intangible, used or useful in conducting the business of public utilities. But these statutory provisions do not in our opinion, in express terms or by implication, provide that the findings of value made by the Public Utilities Commission shall be binding and conclusive upon the State Board of Equalization. The most that can be said in support of the findings of the Public Utilities Commission on questions of fact, in so far as such findings affect the State Board of Equalization, is that they may be regarded by said board as *prima facie* just, reasonable and correct, and for such purpose only are such findings admissible in evidence upon a hearing had before said board, upon application made for reduction of the assessment of a public utility.

The Public Utilities Commission, in its investigations for the purpose of determining the value of any public utility, is expressly limited to property used and useful in the operation of that particular public utility, and from the findings of the commission an appeal lies. (*Murray v. Public Utilities Commission*, 27 Ida. 603, 150 Pac. 47.)

The State Board of Equalization is a constitutional board, clothed by statutory authority with *quasi*-judicial powers in regard to the assessment of certain classes and kinds of property. It is given the power exclusively, and is required, to value and assess the properties of public utilities. It has the right to exercise a fair discretion in expressing its judgment as to the valuation of such property, and when it has once acted, and there is no fraud shown in its judgment, its action is not subject to review. (*General Custer Min. Co. v. Van Camp*, 2 Ida. 40, 3 Pac. 22; *Feltham v. Board of Commrs.*, 10 Ida. 182, 77 Pac. 332; *Humbird Lumber Co. v. Morgan, Judge*, 10 Ida. 327, 77 Pac. 433.)

We think the rule to be well settled that where state elective officers are invested with certain discretion, involving

the exercise of judgment in the performance of their official duties, no court has the right by writ of *certiorari* to interpose its judgment or influence their action. To do so would be usurpation. If a court is not permitted to usurp the duties and functions of an elective officer or constitutional board clothed with express statutory authority, we can see no reason for the rule, as contended by counsel for appellant, that would make the findings of a statutory board, with restricted jurisdiction and power, conclusively binding upon the action of such constitutional board, thereby depriving it of its legal right to exercise a fair discretion in expressing its judgment as to the valuation of the particular property that by statute it is made its mandatory duty to value for taxation purposes. (*Northern P. R. Co. v. County of Clearwater,* 26 Ida. 455, 144 Pac. 1; *State v. Kendall,* 15 Neb. 262, 18 N. W. 85; *State v. Savage,* 65 Neb. 714, 91 N. W. 716; *United States v. Seaman,* 17 How. 225, 15 L. ed. 226; *United States v. Guthrie,* 17 How. 284, 15 L. ed. 102; *Pittsburgh, C. C. & St. L. R. v. Backus,* 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. ed. 1031; *Maish v. Arizona,* 164 U. S. 599, 17 Sup. Ct. 193, 41 L. ed. 567.)

Counsel for appellant, in support of his contention that the findings of the Public Utilities Commission of the value of appellant's property is conclusive and binding upon the State Board of Equalization in the absence of proof of acquired or additional property, improvements or extensions of its property, subsequent to the hearing had before the Public Utilities Commission and prior to the second Monday in January, 1916, cites the Washington Session Laws, 1911, c. 117, p. 604, which, it is insisted, is similar to sec. 66, c. 61, pp. 290, 291, Idaho Sess. Laws, 1913. Upon an examination of these statutes it will be found that there is a marked similarity. However, with respect to the admissibility of the commission's findings as evidence, the Washington statute provides that such findings shall be admissible in evidence in any action, proceeding or hearing, in which the state, etc., is interested; while the Idaho law provides that "such findings shall be admissible in evidence in any action, proceed-

ing or hearing, *before the commission or any court,* in which the commission, the state,'' etc., may be interested. In other words, there is a limitation upon the admission of the findings of the commission to proceedings or hearings had before the commission or any court. The State Board of Equalization is not a court within the meaning of sec. 66, c. 61, *supra.*

In Idaho the findings having been admitted in evidence, under a reasonable construction of the statute, are but *prima facie* evidence of the facts therein stated; in Washington they are conclusive evidence of the facts stated; and while it was true that in Washington the findings could only be controverted by showing a subsequent change in conditions bearing upon the facts therein determined, a reasonable construction of our statute makes any findings of the Public Utilities Commission binding upon the commission, but otherwise only *prima facie* evidence of the facts found.

The Washington statute also contained the following provision, not contained in the Idaho statute:

''When the commission shall have valued the property of any public service company, as provided for in this section, nothing less than the market value so found by the commission shall be taken as the true value of the property of such company used for the public convenience for the purposes of taxation.''

With reference to this latter provision the supreme court of Washington, in the case of *Spokane & I. E. R. Co. v. Spokane County,* 75 Wash. 72, 134 Pac. 688, held that the statute above quoted, having been enacted into the law at a later date, made the findings of the commission no more conclusive than they had been under the Washington statute first above mentioned. The supreme court of the state of Washington evidently took the position that findings made by the Public Utilities Commission of that state of the value of the properties of public utilities for rate-making purposes were conclusive evidence of the facts so found, and could not be controverted in any court or before any board, and must be accepted as the true value, not only for rate-making purposes but for assessment purposes as well.

In the case of *State ex rel. Oregon R. & N. Co. v. Clausen*, 63 Wash. 535, 116 Pac. 7, it appears that the railroad commission was directed by statute to "ascertain the total market value of railroad property so as to make up a reasonable schedule of rates." It was also provided that its findings should be conclusive of the facts therein stated. The commission found the property of the Oregon Railroad and Navigation Company worth $19,500,000. The tax commission assessed the Oregon Railroad & Navigation Company at $27,520,771, which assessment was confirmed by the State Board of Equalization. It was held that the findings of the railroad commission were conclusive as to the value of the property. This case, however, differs from the one at bar in that the Idaho Public Utilities Commission, first, is limited in its findings to the value of the property used and useful, and, second, that the commission in the case at bar did not place a valuation upon certain property which in its findings is expressly eliminated, and which was taken into consideration by the State Board of Equalization in determining the value of its property for taxation purposes.

Evidently, however, the legislature of Washington was not pleased with the foregoing decisions of the supreme court of that state, as it amended and re-enacted in secs. 8626–92, Remington's 1915 Code and Statutes of Washington, the following provision:

"The findings of the commission so filed, or as the same may be corrected by the courts, when properly certified under the seal of the commission shall be admissible in evidence in any action, proceeding or hearing, *except with respect to matters of assessment and taxation*," etc.

In view of the foregoing amendment, the statutes of the state of Washington as well as the decisions cited by counsel have no weight as a precedent to be followed by this court in reaching its conclusion.

But even should we have a case where the Public Utilities Commission fixed the value of the property used and useful at a stipulated sum and the State Board of Equalization reached a conclusion that the property was of a greater or

lesser value for the purposes of taxation, construing the foregoing sections of the statute as we understand them, under the decisions of this court the action of the State Board of Equalization would not be subject to review. The different bases of valuation for the purposes of taxation and for rate-making purposes have been uniformly recognized, not only by our own court, but by the appellate courts of·other states as well. (*Knott v. Chicago, B. & Q. R.*, 230 U. S. 474, 33 Sup. Ct. 975, 57 L. ed. 1571; *Willcox v. Consolidated Gas Co.*, 212 U. S. 19, 15 Ann. Cas. 1034, 29 Sup. Ct. 192, 53 L. ed. 382, 48 L. R. A., N. S., 1134.)

It may be that we may at some future date reach a condition where a single valuation of public service property could be made to answer all governmental purposes. We have not yet reached that condition. In no case so far as we are informed has the tax appraisement been accepted by the Public Utilities Commission as sufficient evidence of the value upon which to base rates. There are many public utilities operating in this state whose property for rate-making purposes has never been ascertained by the Public Utilities Commission, and the legislature has not yet felt disposed by express enactment (conceding for the purposes of this case that it has the power so to do) to take away from the State Board of Equalization the authority to fix the value of public utilities for taxation purposes, independent of the value found by the Public Utilities Commission.

It will be recalled that sec. 86, c. 58, 1913 Sess. Laws, p. 199, in express terms requires the State Board of Equalization to assess the operating property, transmission lines and franchises of public utilities, wholly or partly within the state, for taxation for state, county, city, town, village, school district, and other purposes. The board performs the same duties with reference to such property as do county assessors in the assessment of other property within their respective counties, and in making such assessment they are invested with certain discretion involving the exercise of judgment in the performance of their duties, which is not subject to review.

This court in the case of *Blomquist v. Board of County Commrs.*, 25 Ida. 284, 137 Pac. 174, as we understand that decision, supported the foregoing proposition, where the court held that an assessment having been made by the county assessor, it was not subject to change or modification as a result of the findings of the tax commission, and refused to require by writ of mandate the county board of equalization to cancel the assessment made by the county assessor and substitute in lieu thereof the findings of the tax commission. In the course of its opinion this court said:

"We are not inclined to follow any decision which holds that the legislature has power or authority to set aside the system or scheme for assessing, equalizing and taxing property established by the constitution and enact one of its own. . . . . The legislature did not intend to create an appointive board composed of three members who might review and set at naught all actions of the assessors and boards of equalization provided by the constitution. . . . . It was clearly the manifest intention of the legislature of Idaho to limit the Idaho tax commission to a certain field."

It is clear to our minds that if this court should hold that the power to assess public utilities in this state is vested in the Public Utilities Commission, and the power to place a value thereon for assessment purposes is taken away from the State Board of Equalization, either in whole or in part, that board would be deprived of its judgment and discretion in the matter of the assessment of the public utilities of this state, and in lieu of being the board with power to assess and equalize the properties of public utilities, it would become a listing board only. Such a holding would be in direct conflict with the law as announced by this court in the Blomquist case, *supra*, wherein it held that the legislature cannot assess property, nor can an appointive board assess property for taxation under the constitution and laws of this state. In the latter case the duties of the assessor and county board of equalization as against the power of the state tax commission were in issue; while here is involved the power of the State Board of Equalization, sitting as a taxing and equal-

ization board, as against the power of the Public Utilities Commission to make assessments. The county assessor and the board of county commissioners, the latter constituting the county board of equalization, is composed of elective officers; the tax commissioners were appointive officers; the State Board of Equalization is made up of elective officers; the Public Utilities Commission is made up of appointive officers.

It therefore follows that if the findings of the Public Utilities Commission of the value of a public utility are conclusive upon the State Board of Equalization, the property of the public utility will be assessed by an appointive board. While it might be argued that these findings are conclusive only to the extent that the State Board of Equalization cannot find a greater value; that it may find a lesser value, or the value of additions, improvements and extensions of the property of a public utility; yet in any event its right to find the value of the entire property for taxation purposes is taken away from it, and replaced by the findings of the Public Utilities Commission to the extent that the findings of the commission are conclusive and binding upon the board in determining the value of a public utility, which would result, either in whole or in part, in the property of public utilities being assessed by an appointive board; in conflict with our general scheme and system of taxation in this state.

It is stated in Cooley on Taxation, 3d ed., p. 778, that a board to review assessments, having power to make changes, is in effect a board of assessors, and if by the law assessors must be elected by the people, the members of such board must be so chosen.

If the value of plaintiff's property, as found by the Public Utilities Commission, was not in truth and in fact its cash value, either for rate-making purposes or for taxation, an appeal is provided from the findings of such commission, and would result in a correction of its findings, but it is not within the power of this court by writ of review to substitute the findings of the Public Utilities Commission in lieu of the judgment of the State Board of Equalization.

It appears, therefore, that this is not a proper case for granting a writ of *certiorari*.  The writ will be quashed and the proceedings dismissed, and it is so ordered.  Costs are awarded to defendant.

Sullivan, C. J., and Morgan, J., concur.

### ON PETITION FOR REHEARING.

#### (December 1, 1916.)

BUDGE, J.—Counsel for plaintiff have filed a petition for a rehearing in which they insist that this court was not fully advised as to the terms of the statute with reference to the power of the State Board of Equalization to assess the property owned by the plaintiff, a public utility, and that counsel had failed to make plain to this court the exact point at which the authority and power of the county assessor ceases and that of the State Board of Equalization begins, and they urge very strenuously that the property owned by their client, the Northwest Light and Water Company, was wrongfully assessed by the State Board of Equalization, for the reason that the Public Utilities Commission, in its findings, found that a portion of the property assessed by the State Board of Equalization was not used or useful in the successful operation of the public utility, and in the absence of any showing to the contrary that such property had been theretofore assessed, or was subject to assessment, by the county assessor of Shoshone county.

They base their contention, as we understand them, upon the findings made by the Public Utilities Commission that property worth approximately $60,000 was not considered by the commission in determining the value of the property of the public utility for rate-making purposes, as property used and useful in the successful operation of such public utility, and that the same having been excluded by the Public Utili-

ties Commission, the State Board of Equalization had no authority to assess it, and in doing so exceeded its jurisdiction.

There is no showing in the record before us that this property was assessed by the county assessor, and we cannot agree with counsel that it must be conclusively presumed by this court that this property was assessed by the county assessor; neither are we in harmony with counsel in their contention that because the Public Utilities Commission, in their opinion, excluded property of the value of $60,000 as property not used or useful in the operation of a public utility, that such finding is conclusive upon the State Board of Equalization; but we are forced to the contrary view that such findings are not conclusive upon the board.

We are not inclined to the view that the findings of an appointive commission of the value of a public utility must be accepted by the State Board of Equalization for the purposes of assessment; neither are we persuaded that the findings of the Public Utilities Commission shall determine the exact point where the authority and power of the State Board of Equalization cease and the power and authority of the county assessor begin.

To hold that the Public Utilities Commission, by its findings, may conclusively determine what property owned by a public utility is subject to assessment by the State Board of Equalization, and what property is subject to assessment by the county assessor, would in effect deprive a constitutional board and a constitutional officer of authority expressly conferred upon them by the constitution and statutes of this state to determine what property is subject to assessment, and by whom, and vest that power in an appointive board, without either authority to classify property for assessment by the State Board of Equalization or by the county assessor for the purposes of assessment.

Sec. 86, Sess. Laws 1913, p. 199, provides: "The operating property of all . . . . electric . . . . lines . . . . shall be assessed for taxation . . . . purposes exclusively by the State Board of Equalization."

To confer upon the State Board of Equalization the power to assess certain property for taxation purposes, and to deprive it of the right to determine what property is subject to assessment, and confer that power upon an appointive body, namely, the Public Utilities Commission, would be directly in conflict with the provisions of the statute. It is for the board to determine what property is operating property of a public utility, and what is reasonably necessary for the maintenance and successful operation of such a public utility, and all property used or to be used by such public utility, including their franchises, is subject to assessment exclusively by the State Board of Equalization. It is not within the power of the Public Utilities Commission, under the statutes now in force, to determine for the State Board of Equalization, or the county assessor, what particular property of any public utility is liable for assessment either by the State Board of Equalization or by the county assessor; and although the Public Utilities Commission may say that, in its opinion, $107,500 is the value of the property of a public utility for rate-making purposes, it does not necessarily follow that $107,500 is the actual value of the property of a public utility, subject to assessment by the State Board of Equalization.

If a public utility is not satisfied with the value fixed on its property, for rate-making purposes, by the Public Utilities Commission, it has its remedy by review.

As was stated in the original opinion, the different bases of valuation for the purposes of taxation and for rate-making purposes have been uniformly recognized. The State Board of Equalization is not conclusively bound by the findings of the Public Utilities Commission of the value of a public utility for rate-making purposes, as the value of such public utility for taxation purposes; neither is the board bound to take into consideration only such property as was considered by the Public Utilities Commission for rate-making purposes.

The sovereign power does not seek to take an undue advantage of the public utility, but, upon the contrary, affords it a review from the findings of the Public Utilities Commis-

sion, and if the value of its property is found by such commission, for rate-making purposes, to be less than its actual cash value for the purposes of taxation, it has a plain, adequate and complete remedy by review. While this remedy exists there is no merit in the contention that the property of the public utility will be taken without due process of law, and that private property will be taken for public use without just compensation, in contravention of article 5 of the articles amendatory to the constitution of the United States of America, known as the fifth amendment to the constitution of the United States.

We have reached the conclusion that the questions involved in the petition for rehearing were correctly decided in the original opinion in this case, which is accordingly adhered to.

Sullivan, C. J., and Morgan, J., concur.