612 P.2d 126

**SCHOOL DISTRICT NO. 25, BANNOCK COUNTY, State of Idaho, et al., Plaintiffs-Respondents,**

v.

**The STATE TAX COMMISSION of the State of Idaho, acting as the State Board of Equalization of the State of Idaho, Defendant-Appellant.**

No. 12904.

Supreme Court of Idaho.

April 23, 1980.

Rehearing Denied July 1, 1980.

**284**

David H. Leroy, Atty. Gen., Theodore V. Spangler, Jr., Deputy Atty. Gen., Boise, for defendant-appellant.

Robert C. Huntley, Jr. of Racine, Huntley & Olson, Wesley F. Merrill of Merrill & Merrill, Gerald W. Olson of Johnson & Ol-son, Garth S. Pincock, Pocatello, for plaintiffs-respondents.

SHEPARD, Justice.

This is an appeal by defendant-appellant State Tax Commission from a declaratory judgment sought and obtained by plaintiffs-respondents Bannock County, the City of Pocatello, School District No. 25, and several individual taxpayers. Following trial, judgment issued declaring I.C. § 63–707 unconstitutional as violative of the Fourteenth Amendment to the United States Constitution and Art. 3, § 19 and Art. 7, § 5 of the Idaho Constitution. Plaintiffs-respondents contended at trial and the district court issued judgment on the basis that I.C. § 63–707 is unconstitutional because it provides a different tax treatment of the operating property of electric public utilities as contrasted with the tax treatment of the operating property of all other utilities and railroads.

Prior to a 1915 legislative amendment of I.C. § 63–707, the operating property of all public utilities was valued and apportioned by the same method. In 1915, the legislature amended that statute to read as it does today that the operating property of all public utilities and railroads is to be assessed by the State Tax Commission. The Tax Commission determines the value of all the operating property [1] of a public utility which is located within the State of Idaho. The Tax Commission then determines the portion of that total statewide value which is attributed to each county and taxing district within which that utility owns operating property. Certification of estimates of market value for assessment purposes and assessed values are made by the Tax Commission annually to each taxing entity

---

1. 63–113. *Operating property defined.*—The term "operating property" as used in this act shall include all franchises, rights of way, roadbeds, tracks, pipelines, terminals, rolling stock, equipment, power stations, power sites, lands, reservoirs, generating plants and substations, all immovable or movable property operated in connection with any public utility or car company *including the operating property of all railroads, telegraph, telephone, electric cur-*rent transmission and distribution lines, pipelines for the transportation of commodities, including water under the jurisdiction of the Idaho public utilities commission, wholly or partly within this state, and reasonably necessary to the maintenance and operation of such road or line, or in conducting its business, and shall include all title and interest in such property, as *owner, lessee or otherwise.*

which in turn imposes a levy. The tax is then collected by the county to which a portion of that operating property has been apportioned.

I.C. § 63–707 sets forth the method to be used by the Tax Commission in apportioning the value of utility operating property among the counties and taxing districts throughout the state.[2] It provides that all utilities and railroads, with the exception of electric utilities, will have their operating property apportioned on a statewide value per mile basis or, as it is often termed, a "unit value concept." That method provides that the Tax Commission initially assesses the total value of the operating property of a public utility located within the state. The value per mile is then determined by dividing that total statewide assessed value by the number of miles of line (wire, track or pipeline) within the state. The miles of line within each taxing entity is then multiplied by the value per mile and that result is then apportioned to each respective county and taxing entity.

I.C. § 63–707 prescribes, however, a different method of electric utility operating property apportionment. All operating property of an electric utility, including transmission and distribution lines, is apportioned as it is located in a county. Thus, for example, the entire assessed value of a power generating facility is apportioned only to the county in which it is located. A county "value per mile" is determined by calculating the total value of the utility operating property within a county and dividing that figure by the number of miles of line within that county. Thereafter, the value of the total property within the county is apportioned among the cities and other taxing entities within that county on the basis of the number of line miles within each taxing entity. The district court

2. 63–707. *Manner of assessment—Valuation.*—The state tax commission must assess all property which, under the provisions of this chapter, is to be assessed by it, at the meeting of the said commission convening on the second Monday of August in each year, and must complete the assessment of such property on the fourth Monday of August in that year. The said commission shall at such meeting ascertain and determine the assessed value of all such property in the state, except electric current transmission and distribution lines, and shall determine the total value, the number of miles and value per mile of each railroad, telegraph and telephone line, and pipeline for transportation of commodities, including water companies under the jurisdiction of the Idaho Public Utilities Commission, in the state, the value, number of miles, and value per mile of such line in any county into, or through which the said line extends, and the value, number of miles and value per mile, of such line in any incorporated city, school district or other taxing district into or through which the said line extends. The value per mile of any except electric current transmission and distribution lines, is to be determined by dividing the total value of such line within the state by the number of miles of such line within the state.

The said commission shall at such meeting ascertain and determine the assessed value of the electric current transmission and distribution lines in each county separately, and shall determine the total value, the number of miles, and value per mile of each electric current transmission and distribution line in each county into or through which said line extends, and the value, number of miles and value per mile

of such line in any incorporated city, school district or other taxing district into or through which the said line extends. The value per mile of electric current transmission and distribution lines is to be determined by dividing the total value of such line within each county by the number of miles of such line within said county, and all operating property of such electric current transmission and distribution lines shall be assessed as of and apportioned to the county in which the same is situated as a part of the transmission line in said county.

If the property of any company assessable under this section is of such a nature that it cannot reasonably be apportioned on the basis of rail, wire, pipeline mileage, such as microwave and radio relay stations, the tax commission may adopt such other method or basis of apportionment to the county and taxing districts in which the property is situate as may be feasible and proper.

All property assessed as herein provided shall be valued as of the same time as other property in the state is valued, and the value of all franchises held by any person whose property has been assessed as herein provided shall be included in the value of such property.

In the event any provisions of section 63–707, Idaho Code, shall be finally judicially determined by the Idaho supreme court to be unconstitutional, a moratorium on the enforcement of any rights found to result from such finding of unconstitutionality shall be in effect until January 1 of the next succeeding year following the determination of unconstitutionality.

termed this method of apportioning assessed value the "situs" method.

The district court found no rational basis for the distinction made by I.C. § 63–707 between electric utilities and all other utilities for tax apportionment purposes. The court further found that the effect of the statute is to arbitrarily favor some citizens and taxing entities of Idaho over others, without any rational or permissible justification. It concluded that because of the unconstitutional statute, the Tax Commission should assess all utilities and apportion the revenues resulting from utility taxation in a consistent manner, using either a "situs" or "unit value concept." The court determined that it should not rule whether all utilities should be apportioned on a situs or unit value concept, but it did enter findings and conclusions of law to be implemented if the Tax Commission should utilize the unit value concept.

Under the present practice of the Tax Commission, separate values per mile are established in each county for both transmission and distribution lines of electric public utilities. The Commission has ruled that all electric power lines of more than 44,000 kilovolts are to be categorized as transmission lines and all lines carrying below that voltage are to be characterized as distribution lines. The district court concluded that if the Tax Commission is to utilize the unit value concept, it should be placed upon all transmission and distribution lines. The court ruled that the value per mile of a transmission line should be the same as a distribution line.[3]

Before embarking upon analysis, we deem it necessary to point out what is *not* involved in the instant action. This action does not involve an action by a taxpayer claiming that *his* property is taxed at an unfair, disproportionate or inequitable amount by reason of a statutory requirement or the application of a statute in a capricious or discriminatory manner as contrasted with like property of other taxpayers. Rather, the instant case involves beneficiaries of the ad valorem system of taxation in Idaho. As to the government entities involved, they contend that they do not receive as much money from their taxation of electric utilities under the statutorily mandated "situs" method of apportioning property within counties as they would if electric utilities operating property was apportioned amongst the counties in the state under a "unit value concept." It is the contention of the individual and association plaintiffs that they are being deprived of benefits in the form of increased tax revenues which would otherwise flow to them, primarily in the field of education, if electric utility operating property were not apportioned among the counties on a "situs" methodology as required by the statute.

Plaintiffs below asserted, and the trial court held, that the statute in question here was violative of the Equal Protection Clause of the United States Constitution. We do not agree. It has long been held that our legislature possesses plenary power in the area of taxation. *E. g., Boise Cascade Corp. v. Dept. of Employment,* 94 Idaho 721, 496 P.2d 958 (1972); *Anderson v. Rayner,* 60 Idaho 706, 96 P.2d 244 (1939).

---

**3.** The carefully drafted memorandum opinion of the district judge dealt only with the constitutionality of the statute in question based on the taxing and distribution of tax revenues from electric utility companies as contrasted with all other types of utilities. The issue of different valuations per mile of transmission lines as compared with distribution lines surfaces for the first time in the findings of fact and conclusions of law which plaintiffs' counsel was invited to and presumably did draft for the signature of the trial court. Although couched in terms of findings, they are clearly conclusions as to what would be the "most fair and equitable * * * methodology" if the

Tax Commission were to adopt a unit value concept. In view of our resolution of the constitutional problem, additional discussion of the issue is not warranted. We further note that the same problem exists as to the court's findings, conclusions and judgment relating to Pacific Power & Light transmission lines which traverse four counties in southern Idaho as being required to be apportioned among the counties in which the lines are located, rather than apportioning a part thereof to Bonner County. Again, in view of our ruling on the constitutionality of the statute, this issue requires no further discussion.

As part of this power, the legislature may declare exemptions from taxation in the absence of constitutional inhibition. *E. g., Boise Cascade Corp. v. Dept. of Employment, supra.* It is not argued that any constitutional infirmity attaches to the basic legislation enabling the State Tax Commission to determine the assessed valuation of a public utility's operating property on a statewide basis. That authority was conferred by the 1913 legislature (1913 Idaho Sess. Laws ch. 58, § 86), and our Court in 1916 in *Northwest Light Company v. Alexander*, 29 Idaho 557, 566, 160 P. 1106, 1109 stated:

> "The State Board of Equalization [State Tax Commission] is a constitutional board clothed by statutory authority with quasi judicial powers in regard to the assessment of certain classes and kinds of property. It is given the power exclusively, and is required, to value and assess the properties of public utilities. It has the right to exercise a fair discretion in expressing its judgment as to the valuation of such property, and when it has once acted, and there is no fraud shown in its judgment, its action is not subject to review."

*See also, Ada County v. Bottolfsen*, 61 Idaho 363, 102 P.2d 287 (1940).

It may well have been the legislative theory that public utilities are more apt than not to own operating property wh'ch transcends county boundaries and in a.1y event that the determination of assessed value of such operating property is, in most cases, a matter of expertise beyond the ken of the ordinary county assessor in Idaho. Just as in other areas of taxation [motor fuels tax and highway user tax, kilowatt hour tax and insurance premium receipts tax], the legislature might determine that taxes derived from the operating property of public utilities are to be devoted to a special purpose on the state level and hence not taxable at all by local units of government. On the other hand, as some argue, the legislature might well determine that ad valorem taxes levied upon public utility property should be abolished and such properties should be classified as exempt by our

legislature. That argument is founded on the realistic view that the owners of public utilities are not taxed, but rather since real property taxes are a portion of the rate-making structure, it is the customers and ratepayers of the utility who pay the taxes.

■ The State Tax Commission possesses the power to create classifications of property for the purpose of assessment of property for ad valorem tax purposes. *Abbot v. State Tax Commission*, 88 Idaho 200, 398 P.2d 221 (1965). Here, of course, it is the legislature that has mandated the State Tax Commission to classify the operating property of electric public utilities differently from the operating property of other utilities for tax apportionment purposes. Because the legislative power in this area is plenary, this Court is without power to override the legislative mandate unless that mandate offends the constitutional provisions relating to equal protection.

The instant case is readily distinguishable from *Idaho Telephone Company v. Baird*, 91 Idaho 425, 423 P.2d 337 (1967). In *Baird*, it was essentially decided that the ad valorem taxation process involves the determination of the assessed valuation of property and thereafter the application of a tax levy on that value. It was there held that our constitutional requirement of uniformity of taxation applies not only to the levy requirement, but also to the determination of assessed valuation. Thus, *Baird* held that one type of property could not be assessed at thirty percent of its full cash value while another type was assessed at only twenty percent of full cash value. In the case at bar, no such discrepancies exist in either the determination of assessed valuation or in the application of a uniform levy.

Here the district court concluded,

> "That the establishment of *different ad valorem tax treatment* for electric utilities as opposed to all other utilities establishes a classification which is arbitrary and unreasonable, and which does not constitute a rational relationship to a permissible state objective, with a result that the statute does not treat all persons sim-

ilarly situated in a like manner." (emphasis added).

We note first that no person similarly situated, i. e., a public utility, appears in this action or enters any protest to the statutory apportionment scheme. Secondly, the statute does not establish a different "tax treatment" for electric utilities. Insofar as we are informed, the determination of full cash value and the application of a percentage factor to full cash value to determine assessed value are uniform as to all who are similarly situated. As to the levy applied to that assessed value, there is no showing of differentiation between the operating property of electric utilities as contrasted with other utility operating property within the same taxing authority. Hence, we do not agree that there exists a "different advalorem tax treatment" as between various public utility operating property. Rather, the real issue revolves around the statutorily mandated apportionment of public utility property within various counties and the alleged disproportionate amount of revenue which may be raised by counties and taxing districts because of the greater or lesser amount of operating property apportioned to those entities.

It is clear that the classifications created in I.C. § 63–707, i. e., electric utilities as contrasted with all other utilities and railroads, are non-suspect. Therefore, such classification will withstand an equal protection challenge if there is any conceivable state of facts which will support it, and the burden is upon the one attacking the legislative arrangement to negative every conceivable basis which might support it. A classification does not offend the constitution simply because it is not made with mathematical nicety or because in practice it results in some inequality. *Idaho Department of Employment v. Smith*, 434 U.S. 100, 98 S.Ct. 327, 54 L.Ed.2d 324 (1977); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). *See also Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d

520 (1976); *Mathews v. de Castro*, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976); *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

In *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973), the court stated:

"The Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is an invidious discrimination. *Harper v. Virginia Board of Elections*, 383 U.S. 663, 666 [, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169] (1966). Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the states have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." *Id.* at 359, 93 S.Ct. at 1003.

*See also Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); *Metropolis Theatre Co. v. Chicago*, 228 U.S. 61, 33 S.Ct. 441, 57 L.Ed. 730 (1913); *Carmichael v. Southern Coal Co.*, 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937).

The United States Supreme Court in *Madden v. Kentucky*, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940), stated the matter of tax classification as follows:

"[I]n taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality *can be overcome only by the most explicit demonstration that a classification is hostile and oppressive discrimination* against particular persons and classes. The burden is upon the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Id.* at 88, 60 S.Ct. at 408 (emphasis added).

*See also Lehnhausen v. Lake Shore Auto Parts Co., supra.*

Appellants have suggested a number of possible legislative motives behind the classification scheme in I.C. § 63–707. Among those are the fact that electrical utilities differ from other utilities in that they generate a commodity for sale and therefore the location of such generating plant is more analogous to a private manufacturing facility and should be taxable in the county of its situs since it poses problems to the county of its situs which are not posed in other counties through which only its transmission lines might run. It is argued that the problems of fire and police protection, together with vast amounts of lands inundated by reservoirs, pose problems which are not common to non-situs counties.

We turn now to the contention of the respondent that I.C. § 63–707, is violative of Art. 7, § 5 of the Idaho Constitution. That issue was raised in the court below and while the trial court in its memorandum decision carefully set forth its rationale for finding the statute violative of the Equal Protection Clause of the Fourteenth Amendment, the court did not discuss therein the alleged violation of Art. 7, § 5 of the Idaho Constitution. Nevertheless, in its findings of fact and conclusions of law, the trial court concluded that the statute was violative of Art. 7, § 5 of the Idaho Constitution. Hence, we are not privy to the rationale used by the trial court in arriving at that conclusion.

Art. 7, § 5 of the Idaho Constitution provides:

"*Taxes to be uniform—Exemptions.—* All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal: provided, that the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just, and all existing exemptions provided by the laws of the territory, shall continue until changed by the legislature of the state: provided further, that dupli-cate taxation of property for the same purpose during the same year, is hereby prohibited."

The uniformity provision of Art. 7, § 5 of the Idaho Constitution is not violated by one taxing unit within the state imposing a heavier or lighter tax rate than another taxing unit. The uniformity clause of Art. 7, § 5 only requires that the tax rate shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. Hence, the fact that under the provisions of I.C. § 63–707, the "value per mile" of operating property of an electric utility will differ as between various taxing districts does not render the statute violative of Art. 7, § 5 of the Idaho Constitution. *See generally, District Bd. of Health of Public Health Dist. No. 5 v. Chancey,* 94 Idaho 944, 500 P.2d 845 (1972); *Independent School Dist. No. 6 in Twin Falls County, Idaho v. Common School Dist. No. 38 in Twin Falls County, Idaho,* 64 Idaho 303, 131 P.2d 786 (1942); *Scandrett v. Shoshone County, et al.,* 63 Idaho 46, 116 P.2d 225 (1941); *Idaho County v. Fenn Highway Dist.,* 43 Idaho 233, 253 P. 377, 106 A.L.R. 920 (1926).

Respondents principally rely on *Chastain's, Inc. v. State Tax Commission,* 72 Idaho 344, 241 P.2d 167 (1952). *Chastain* and its rationale was more thoroughly discussed in this Court's later decision in *Idaho Telephone Co. v. Baird,* 91 Idaho 425, 423 P.2d 337 (1967). In *Chastain,* the State Tax Commission, sitting as the State Board of Equalization, increased the assessed value of merchandise, machinery, furniture and fixtures in Nez Perce County from 23% to 29.9% of its full cash value. All other property, however, in that county remained at an assessed value of 23% of its full cash value. The court there concluded that to apply differing percentages of full cash value to property within the limits of the same taxing authority violated the requirement of uniformity mandated by Art. 7, §§ 2 and 5 of the Idaho Constitution.

In *Baird,* the court had for consideration legislation classifying all property within the State of Idaho into three categories, *i.*

e., real property, personal property, or operating property. As statutorily defined, operating property included only certain property of public utilities and car companies. The statute required that real property and personal property were to be assessed at 20% of full cash value, but operating property was to be assessed at 40% of full cash value. The court in *Baird* held that such statutory scheme requiring a higher rate of assessed value for operating property was violative of Art. 7, §§ 2 and 5 of the Idaho Constitution.

We deem both *Chastain, Baird* and their progeny distinguishable from the case at bar. There is no indication in the record here nor is there any assertion that a different percentage of actual cash value is used to establish the assessed valuation of the operating property of electric utilities as contrasted with one used for other utilities and railroads. As stated in 1 Cooley, Taxation § 298, at 622–23 (4th ed. 1924):

"The rule which seems to be supported by reason is that classification as to the 'method' of valuation, so long as the tendency is to produce equality of taxation, is permissible; but that a classification whereby one class of property is required to be valued at a higher percent of its value than another class is not a reasonable or permissible classification, at least unless the constitution merely requires uniformity on 'the same class of subjects'."

The court in *Baird* stated:

"Classification of property, however, may be effected for a variety of purposes; classification for one purpose may contravene the rule of uniform ad valorem taxation, while another classification scheme does not. For example, even in jurisdictions where the role of uniformity is acknowledged to prevail, the legislatures or state tax commissions may promulgate reasonable classifications so as to provide different methods for determining the true value of disparate species of property. The overriding rule of uniformity does not preclude classification for such purposes, since the end of uniformity is promoted by applying sophisticated valuation methods to distinctive classes of property. To demand absolute uniformity in methods of valuation would defeat the prior, supreme requirement of equality and uniformity. The constitutional mandate is satisfied if the methods are not obviously designed to produce discriminatory burdens upon different classes of property." *Id.* at 431, 423 P.2d at 343.

When the constitutionality of a statute is challenged, this Court has established certain presumptions and duties. The challenger must overcome the presumption in favor of constitutionality and clearly show the invalidity of the statute. *Standlee v. State*, 96 Idaho 849, 538 P.2d 778 (1975); *Leonardson v. Moon*, 92 Idaho 796, 451 P.2d 542 (1969). This Court is without power to invalidate or nullify an enactment of the legislature unless such clearly violates the constitution. *Idaho Telephone v. Baird, supra*; *Caesar v. Williams*, 84 Idaho 254, 371 P.2d 241 (1962). Every reasonable presumption must be indulged in favor of the constitutionality of an enactment. *State v. Pontier*, 95 Idaho 707, 518 P.2d 969 (1974); *Idaho Telephone Co. v. Baird, supra*.

We hold that the provisions of I.C. § 63–707 requiring a different method for the apportionment of the value of operating property of electric utilities to various taxing districts as contrasted with other utilities and railroad companies do not contravene the requirement of uniformity of taxation found in Art. 7 of the Idaho Constitution.

Respondents also assert that I.C. § 63–707 is violative of Art. 3, § 19 of the Idaho Constitution. The trial court so concluded. However, again, we are not privy to the rationale by which the trial court arrived at such determination. That constitutional provision provides in pertinent part:

"The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * For the assessment and collection of taxes. * * * Exempting property from taxation."

A local law is one that is special in the sense of applying to a particular locality or particular localities to the exclusion of others. 2 Sutherland, Statutes and Statutory Construction § 40.01 (4th ed. 1973). A statute is not "local" in operation, so as to render it violative of Art. 3, § 19 of the Constitution, when it applies equally to all areas of the state. *District Bd. of Health of Public Health District No. 5 v. Chancey,* 94 Idaho 944, 500 P.2d 845 (1972). We hold that the mere fact that the amount of taxable operating property located within the state differs from one county to another does not render I.C. § 63–707 constitutionally prohibited "local" legislation. Further, we hold that I.C. § 63–707 is not "special" in nature, thereby rendering it violative of Art. 3, § 19 of the Constitution. A special law applies only to an individual or number of individuals out of a single class similarly situated and affected or to a special locality. A law is not special simply because it may have only a local application or apply only to a special class if, in fact, it does apply to all such cases and all similar localities and to all belonging to the specified class to which the law is made applicable. *State ex rel. Nielson v. Lindstrom,* 68 Idaho 226, 191 P.2d 1009 (1948); *Ada County v. Wright,* 60 Idaho 394, 92 P.2d 134 (1939); *see District Bd. of Health of Public Health District No. 5 v. Chancey, supra; Wanke v. Ziebarth Constr. Co.,* 69 Idaho 64, 202 P.2d 384 (1949); *In re Crane,* 27 Idaho 671, 151 P. 1006 (1915); *Mix v. Bd. of County Commissioners,* 18 Idaho 695, 112 P.

215 (1910). A statute is general and not special if its terms apply to and its provisions operate upon all persons and subject matters in like situations. *District Bd. of Health of Public Health District No. 5 v. Chancey, supra; In re Bottjer,* 45 Idaho 168, 260 P. 1095 (1927); *Jones v. Power County,* 27 Idaho 656, 150 P. 35 (1915). Here, it is clear that each county throughout the state is entitled, under I.C. § 63–707, to tax the assessed value of the operating property of electric utilities located within that county's boundaries. The fact that one county may have a larger or smaller amount of such operating property within its borders as contrasted with some other county does not render I.C. § 63–707 violative of our constitution.

Although the appellant assigns error to the action of the trial court in refusing to dismiss the action on the basis of lack of standing of the plaintiffs, we do not address the question. Solely for the purpose of reaching the merits, we assume the trial court was correct in its determination of standing.[4]

The judgment of the trial court is reversed. No costs.

DONALDSON, C. J., and BAKES, McFADDEN and BISTLINE, JJ., concur.

---

**4.** It is unnecessary to the decision here to comment upon ch. 310, § 1 of the 1979 Idaho Session Laws and we merely note that such legislation provides:

"SECTION 1. Section 63–707, Idaho Code, prescribes methods of assessment and allocation of values of operating property within the State of Idaho, for purposes of ad valorem taxation. The legislature finds that substantial changes in those methods will cause irreparable fiscal injury to numerous taxing districts if such changes are implemented prior to the enactment of corrective legislation which addresses the fiscal impact of changes in those methods; the legislature finds and determines that in the event section 63–707, Idaho Code, shall be found to be unconstitutional, in whole or in part, it is in the public interest that a moratorium on the enforcement of any rights found to result from a required change in methods be in effect until the next succeeding session of the Idaho legislature at which time those rights may be enforced and the fiscal impacts upon taxing districts may be ameliorated by corrective legislation."

Said legislation purports to amend I.C. § 63–707 by adding the following language:

"In the event any provisions of section 63–707, Idaho Code, shall be finally judicially determined by the Idaho supreme court to be unconstitutional, a moratorium on the enforcement of any rights found to result from such finding of unconstitutionality shall be in effect until January 1 of the next succeeding year following the determination of unconstitutionality."