644 P.2d 341

**TWIN FALLS CLINIC & HOSPITAL BUILDING CORPORATION, an Idaho corporation, Plaintiff-Appellant,**

v.

**Robert L. HAMILL, Jr., Defendant-Respondent.**

No. 13546.

Supreme Court of Idaho.

April 27, 1982.

Thomas L. Stephan of Stephan, Slavin, Easton & Stephan, Twin Falls, for plaintiff-appellant.

John P. Howard and Nickolas J. Dibert of Quane, Smith, Howard & Hull, Boise, for defendant-respondent.

SHEPARD, Justice.

This is an appeal from a summary judgment in favor of defendant Hamill in an action alleging breach of contract and architectural malpractice by Hamill. Summary judgment was granted on the basis that the action was barred by the statute of limitations. We affirm in part and reverse in part.

In 1966 plaintiff-appellant Twin Falls Clinic & Hospital Building Corporation, contracted with defendant-respondent Hamill, an architect, to design and supervise the construction of a second story addition to the Clinic's then existing structure. The construction was completed and the addition occupied by December 1, 1969. Difficulties arose almost immediately. Defective window sill flashing allowed rain to seep into the building, a design flaw in the ventilation system resulted in problems in the basement, and the portion of the new addition overhanging a drive-up entrance was designed with inadequate vehicle clearance. Other defects were discovered from 1970 to 1978. It is alleged that the most serious problems resulted from Hamill's failure to adequately provide for expansion and contraction of the building and failure to supervise the securing of the masonry to the structure itself. In 1970 a portion of the brickwork began to separate from structural members and Hamill was called

to examine the problem. He suggested that the problem resulted from normal expansion, was of no importance and that calking and plastering would solve the problem. These directions were followed, but in subsequent years the separation reappeared. The problems re-occurred and the Clinic ultimately contracted for the dismantling and rebuilding of the brickwork during 1976 and 1977.

The Clinic filed this action against Hamill on August 30, 1978, on the basis of breach of contract and professional malpractice. It is to be noted that the Clinic did not allege fraudulent concealment. On motion therefor the trial court granted summary judgment in favor of Hamill. The trial court held that the contractual cause of action was barred five years after completion of the work, I.C. §§ 5–241, 5–216, 5–201, the tort cause of action was barred eight years after completion of the work, I.C. §§ 5–241, 5–219, 5–201, and since the action was instituted nearly eight years and nine months after completion of the work, the entire cause of action was barred by the statutes of limitation.

The Clinic asserted below and here that Hamill's conduct after the construction was completed constituted grounds for estoppel which should bar Hamill from asserting the defense of the statutes of limitation. The trial court held that I.C. § 5–219 precludes the application of estoppel against Hamill. The Clinic asserted that I.C. § 5–241, which prescribes the time at which certain causes of action are deemed to accrue, violated the constitution, but the trial court held against the Clinic and further refused to engraft a discovery exemption upon the statute.

We turn first to the Clinic's assertions regarding estoppel. I.C. § 5–219 provides in pertinent part:

"Within two (2) years ... 4. An action to recover damages for professional malpractice ... provided, however, when the action is for damages arising out of the placement and inadvertent, accidental or unintentional leaving of any foreign object in the body of any person by reason of the professional malpractice of any hospital, physician or other person or institution practicing any of the healing arts or when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of; but in all other actions, whether arising from profe..ional malpractice or otherwise, the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer ...."

We find no intent, either explicit or implicit, in the language of I.C. § 5–219 to eliminate the doctrine of equitable estoppel in professional malpractice actions. Estoppel is a long accepted portion of Anglo-American jurisprudence. *See* 3 W. Blackstone, Commentary on the Laws of England 307 (21st Ed. 1844); E. Coke, Institutes of the Laws of England § 667 (16th Ed. 1812). In one of this Court's early decisions, *Fremont County v. Warner*, 7 Idaho 367, 370, 63 P. 106, 107 (1900), it was stated that estoppel as a principle is "so well established * * * that it needs no citation of authority to support it." Since estoppel is found in the common law, statutory changes therein are not presumed but must be shown by a clear intent to alter or oppose the common law or repeal it by necessary implication. *Industrial Indemnity Co. v. Columbia Basin Steel & Iron, Inc.*, 93 Idaho 719, 471 P.2d 574 (1970); *Hancock v. Halliday*, 65 Idaho 645, 150 P.2d 137 (1944); *Sprouse v. MaGee*, 46 Idaho 622, 269 P. 993 (1928); *School Dist. No. 351, Oneida Co. v. Oneida Education*

*Assn.*, 98 Idaho 486, 567 P.2d 830 (1977); *Valdez v. State*, 83 N.M. 720, 497 P.2d 231 (1972), *cert. denied* 409 U.S. 1077, 93 S.Ct. 694, 34 L.Ed.2d 666 (1973); *Griffith v. Raven Red Ash Coal Co.*, 179 Va. 790, 20 S.E.2d 530 (1942).

We find no expression of clear intent to repeal the doctrine of estoppel in the language of I.C. § 5–219. Although its language indicates that the statute of limitations is not to be extended by a continuing relationship, such does not indicate any clear intent to abolish the doctrine of estoppel. Estoppel does not depend solely upon the existence of a continuing relationship and estoppel does not "extend" a statute of limitations, but rather prevents a party from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute of limitations may have run. We also note that I.C. § 5–219(4) has been characterized as a legislative response to this Court's decision of *Renner v. Edwards*, 93 Idaho 836, 475 P.2d 530 (1970). Estoppel was not an element in *Renner* and not discussed therein; hence, we deem it highly improbable that our legislature intended to impact the doctrine of estoppel in the passage of the statute designed to respond to a decision of this Court having nothing to do with estoppel. We do not address the additional question of whether our legislature has the power to eliminate the doctrine of estoppel from the tools of this Court *See Johnson v. Neel*, 123 Colo. 377, 229 P.2d 939 (1951).

Although this Court has never passed upon the question of whether a party can be estopped from pleading a statute of limitations, such has been well established in other jurisdictions, and we have been cited to no authority to the contrary. *See Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); *Groseth v. Ness*, 421 P.2d 624 (Alaska 1966); *Klamm Shell v. Berg*, 165 Colo. 540, 441 P.2d 10 (1968); *Lyden v. Goldberg*, 260 Or. 301, 490 P.2d 181 (1971); *Gould v. Bird & Sons, Inc.*, 5 Wash.App. 59, 485 P.2d 458 (1971).

Since this matter is before this Court on appeal from an order granting summary judgment, all facts and inferences are to be construed most favorably toward the party against whom judgment is sought. *LaChance v. Ross Machine & Mill Supply, Inc.*, 102 Idaho 505, 633 P.2d 570 (1981); *Smith v. Boise Kenworth Sales, Inc.*, 102 Idaho 63, 625 P.2d 417 (1981). Construing the facts here we are unable to hold that as a matter of law Hamill's actions do not give rise to an estoppel.

The elements of equitable estoppel are, (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth, (2) the party asserting estoppel did not know or could not discover the truth, (3) the false representation or concealment was made with the intent that it be relied upon and (4) the person to whom the representation was made or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice. *Tommerup v. Albertson's Inc.*, 101 Idaho 1, 607 P.2d 1055 (1980); *Idaho Title Co. v. American States Insurance Co.*, 96 Idaho 465, 531 P.2d 227 (1975); *Bjornstad v. Perry*, 92 Idaho 402, 443 P.2d 999 (1968).

It is alleged that Hamill on several occasions stated that separation and cracking in the mortar was due to normal expansion and contraction and should be of no concern, when in reality the problems were caused by Hamill's failure to provide proper expansion protection. Hamill, as the architect who designed and supervised the construction of the building, is subject to the inference that he had actual or constructive knowledge of the failure to provide the necessary expansion protection and the Clinic having no architectural expertise, cannot be held to be required to have discovered the absence of the expansion protection. It can further be reasonably inferred that Hamill's representations were intended to be relied upon and that the Clinic did in fact rely upon those representations when it followed the remedial measures suggested by Hamill. Hamill asserts that two statements by the manager of the

Clinic indicate the non-existence of the elements of estoppel. The context of those statements reveals various inferences which may be drawn therefrom and the resolution of such conflicting inferences clearly would be improper at the summary judgment juncture since the inferences to be gained must be taken as favoring the person against whom summary judgment is sought.

This portion of the action must therefore be reversed and remanded for further proceedings upon which findings of fact may be based regarding Hamill's action, statements, and concealments, if any, and whether they constitute estoppel of Hamill from relying on the statutes of limitations.

 The allegations of the Clinic that Hamill is estopped to rely upon the statute of limitations relate only to those problems caused by defective planning for expansion and contraction. No estoppel is claimed as to those problems such as the defective flashing or improper design of the ventilation system or building overhang. As to those matters, the Clinic additionally asserts that the statutes of limitation and the statutes relating to the accrual of causes of action are unconstitutional. More specifically, the Clinic asserts that I.C. § 5–241 is violative of Art. 1, § 18 of the Idaho Constitution, Art. 3 § 19 of the Idaho Constitution, and the Equal Protection Clause of the United States Constitution.

I.C. § 5–241 provides:

"5–241. Accrual of actions arising out of the design or construction of improvement to real property.—Actions will be deemed to have accrued and the statute of limitations shall begin to run as to actions against any person by reason of his having performed or furnished the design, planning, supervision or construction of an improvement to real property, as follows:

(a) Tort actions, if not previously accrued, shall accrue and the applicable limitation statute shall begin to run six (6) years after the final completion of construction of such an improvement.

(b) Contract actions shall accrue and the applicable limitation statute shall begin to run at the time of final completion of construction of such an improvement.

The times fixed by these sections shall not be asserted by way of defense by any person in actual possession or control, as owner, tenant, or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of an injury or death for which it is proposed to bring an action. Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action.

As used in this section, the term "person" shall mean an individual, corporation, partnership, business trust, unincorporated organization, association, or joint stock company."

I.C. § 5–241 was enacted by the Legislature in 1965. It clearly delineates the time within which actions arising out of the design or construction of improvements to real property are deemed to have accrued. Causes of action founded in contract accrue at the completion of construction, but tort actions, "if not previously accrued", accrue six years after the completion of construction. Thus the legislature has apparently engrafted a limited discovery exception in the area of "tort" liability arising out of the design or construction of improvements to real property. It is to be noted that such exemption would only be applicable to latent defects since patent defects by definition would be those which should have been discovered. Also to be noted is that a "tort" liability sounding in professional malpractice might lie against architects and professional engineers who designed and/or supervised construction of improvements to real property, but plaintiffs in contractual privity with a builder might be relegated to their contract cause of action since a builder might well fail to qualify as a "professional" for the purposes of the definition of "malpractice". These are, of course, questions which are not necessary of resolution in the instant case.

Although, as above indicated, I.C. § 5–241 delineates the point in time at which a cause of action is deemed to arise and therefore the statute of limitations begins to run, that statute does not specify the length of the statute of limitations which constitutes a bar upon its expiration. That function rather is provided by I.C. § 5–219. Therein it is provided that the statute of limitations for an action for professional malpractice shall be two years. Subsection 4 of that statute purports to declare when a cause of action for professional malpractice "shall be deemed to have accrued". On its face that statute would then appear to conflict with the otherwise provisions of I.C. § 5–241, but, I.C. § 5–219 contains express language indicating a lack of intent to amend or repeal I.C. § 5–241.

Hence we arrive at the following conclusions. An action founded in contract and arising out of the design or construction of improvements to real property must be brought within five years from the date of the completion of the construction. A cause of action founded in professional malpractice arising out of the design or construction of improvements to real property must be brought within two years of the discovery of the alleged malpractice and in no event later than eight years following the completion of the construction.

■ We now turn to the various assertions of the Clinic that I.C. § 5–241 is unconstitutional. Article 1, § 18 of the Idaho Constitution provides:

"Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice."

The Clinic asserts that this Constitutional provision prohibits the legislature from abolishing a common law right of action without providing a substitute therefor. Although other courts have split as to the interpretation of similar state constitutional provisions in identical circumstances, this Court has previously rejected such a construction in *Jones v. State Board of Medi-*cine, 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977), and we continue to adhere to that decision. *Compare Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662 (1972), *with Overland Construction Co., Inc. v. Sirmons*, 369 So.2d 572 (Fla. 1979).

■ The Clinic next asserts that I.C. § 5–241 is violative of the equal protection clause of the federal constitution. In determining the proper standard of review of a claimed equal protection question, we note that Twin Falls Hospital argues under the traditional "rational basis" test. Hence, there is no necessity for extended discussion of the standard of review in situations requiring a "suspect classification" nor infringement upon a "fundamental right", thus triggering the application of the "strict scrutiny" test. *Idaho Quarterhorse Breeders Assn., Inc. v. Ada County Fair Board*, 101 Idaho 339, 612 P.2d 1186 (1980); *Jones v. State Board of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). Nor is the statute in question here blatantly or obviously discriminatory as to make appropriate the application of the "means scrutiny" test. *Jones v. State Board of Medicine, supra; Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Rather we hold that the more restrained "rational basis" test involving only limited review of the legislature's decision is appropriate. Such more limited review is particularly appropriate in a consideration of economic legislation. *Idaho Department of Employment v. Smith*, 434 U.S. 100, 98 S.Ct. 327, 54 L.Ed.2d 324 (1977); *Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979).

The most recent articulations of the standard of review at the minimum level of "rational basis" test appear to be *Schweiker v. Wilson*, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981), and *Western & Southern Life Ins. Co., v. State Board of Equalization*, 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). In *Schweiker* the Court stated that this minimum level test requires

"that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives." 450 U.S. at 230, 101 S.Ct. at 1080. In *Western & Southern Life Ins. Co. v. State Board of Equalization, supra,* it was stated that, "[i]n determining whether a challenged classification is rationally related to achievement of a legitimate state purpose, we must answer two questions: (1) Does the challenged legislation have a legitimate purpose?, and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?" 451 U.S. at 668, 101 S.Ct. at 2083.

In determining the legislative purpose in the enactment of I.C. § 5–241, we are furnished with no specific statement of purpose, but find substantial authority in other jurisdictions indicating that similar statutes were enacted as a response to the greatly increased liability sustained by architects and builders since the decline of the common law rule which ended their liability when the building was completed and accepted by the owner. *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972); *Harmon v. Angus R. Jessup Associates, Inc.,* 619 S.W.2d 522 (Tenn.1981); Note, Actions Arising Out of Improvements to Real Property: Special Statutes of Limitations, 57 N.D.L.Rev. 43 (1981). *See also Anderson v. Fred Wagner and Roy Anderson, Jr., Inc.,* 402 So.2d 320 (Miss.1981); *Phillips v. ABC Builders, Inc.,* 611 P.2d 821 (Wyo.1980), indicating that similar statutes have been enacted on nearly a nationwide basis in response to the problem of increased liability.

██ Here we find no assertion that a statute of repose to protect against the litigation of stale claims is not a legitimate state interest, nor do we find it asserted that the legislature may not fashion different statutes of limitation of differing lengths for different types of remedies. It is argued, therefore, that it is not a legitimate state purpose to provide architects and builders with a special accrual statute without affording owners, occupants and material suppliers the same protection.

The question then becomes whether there are valid distinctions as between those various groups so as to justify the legislative classification. We find a plethora of authority holding that such legislative classification is based on valid distinctions. *E.g., Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970), *appeal dismissed,* 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971); *Burmaster v. Gravity Drainage Dist. No. 2,* 366 So.2d 1381 (La.1978); *O'Brien v. Hazelet & Erdal,* 410 Mich. 1, 299 N.W.2d 336 (1980); *Anderson v. Fred Wagner and Roy Anderson, Jr., Inc.,* 402 So.2d 320 (Miss.1981); *Reeves v. Ille Elec. Co.,* 170 Mont. 104, 551 P.2d 647 (1976); *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972); *Josephs v. Burns,* 260 Or. 493, 491 P.2d 203 (1971); *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715 (1978); *Harmon v. Angus R. Jessup Associates, Inc.,* 619 S.W.2d 522, 524 (Tenn.1981); *Yakima Fruit & Cold Storage v. Central Heating & Plumbing Co.,* 81 Wash.2d 528, 503 P.2d 108 (1972).

Other courts, it is true, have found the classification arbitrary and invalid as based on invalid distinctions. *E.g., Fujioka v. Kam,* 55 Haw. 7, 514 P.2d 568 (1973); *Skinner v. Anderson,* 38 Ill.2d 445, 231 N.E.2d 588 (1967); *Loyal Order of Moose, Lodge 1785 v. Cavaness,* 563 P.2d 143 (Okla.1977); *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.,* 260 N.W.2d 548 (Minn.1977); *Kallas Millwork Corp. v. Square D Co.,* 66 Wis.2d 382, 225 N.W.2d 454 (1975); *Phillips v. ABC Builders, Inc.,* 611 P.2d 821 (Wyo.1980).

Without extended discussion, it is sufficient to indicate that we agree with those courts who have found the legislative classifications to be valid and based on sufficient differences. Hence we hold that I.C. § 5–241 is not violative of the equal protection clause of the federal constitution.

██ Twin Falls Clinic also argues that I.C. § 5–241 violates Art. 3, § 19 of the Idaho Constitution, which provides in pertinent part:

"The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * For limitation of civil or criminal actions."

This court has held that a legislative enactment is not special when it treats all persons in similar situations alike. *School District No. 25 v. State Tax Commission,* 101 Idaho 283, 612 P.2d 126 (1980); *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977); *Jones v. Power County,* 27 Idaho 656, 150 P. 35 (1915). We have held herein that there are valid differences supporting the legislative classification as between architects and builders on the one hand and owners, occupiers and material suppliers on the other. Hence, the various classes are not similarly situated and there has been no violation of Art. 3, § 19 of the Idaho Constitution.

■ Appellant Twin Falls finally asserts that a discovery exception to the statute of limitations for professional malpractice, I.C. § 5–219(4), should be engrafted by this Court. In prior cases, *Billings v. Sisters of Mercy,* 86 Idaho 485, 389 P.2d 224 (1964), and *Renner v. Edwards,* 93 Idaho 386, 475 P.2d 530 (1969), this court has so acted to engraft a discovery exception to the otherwise existing statutes of limitation; however, the court was careful to point out therein that it was doing so only in the absence of legislative direction and hence on the basis of what it perceived to be valid policy considerations. Since that time, however, the legislature has acted in the area of defining the point in time at which a cause of action accrues, sometimes in accordance with the decisions of this Court and sometimes with a differing view which we deemed to have effectively overruled the decisions of this Court. This court has thereafter acted in deference to those legislative policy decisions. *Owyhee County v. Rife,* 100 Idaho 91, 593 P.2d 995 (1979); *Martin v. Clements,* 98 Idaho 906, 575 P.2d 885 (1978). We are not at the present time persuaded that such judicial deference to legislative policy making should be abandoned and we adhere to those decisions and decline to create a further discovery exception to the statutes of limitations governing architects negligence.

We conclude, therefore, that the statutes in question are valid exercises of legislative power and that those statutes bar all of the Clinic's claims against Hamill except insofar as Hamill is estopped from relying on those statutes with regard to the problems of building expansion.

Judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent herewith. No costs allowed.

DONALDSON, J., concurs.

BAKES, C. J., concurs in result.

McFADDEN, J., dissents as to that portion of the majority opinion concerning estoppel and concurs with remainder of opinion.

BISTLINE, Justice, concurring and dissenting.

I.

The Court makes two major holdings in its opinion. The first is that I.C. § 5–219 does not preclude the application of estoppel against Hamill. Given this holding the Court remands for further proceedings because under the facts of the case it is "unable to hold that as a matter of law Hamill's actions do not give rise to an estoppel." I have no real problem with this holding of the Court, and believe that the statute should not preclude the application of the doctrine of estoppel in appropriate circumstances. Similarly, application of the Statute of Frauds has been denied on the principle of estoppel.

The second major holding of the Court is that I.C. § 5–241 is constitutional. To reach this conclusion the Court applies the traditional rational basis test. The Court then examines cases from other jurisdictions which have dealt with similar statutes and finds that the legislative classifications in the statute are "valid and based on sufficient differences," from which hypothesis it is said, therefore, the statute does not violate equal protection. It is with this holding of the Court that I cannot agree.

## II.

The Court holds that in this case "the more restrained 'rational basis' test involving only limited review of the legislature's decision is appropriate." While this conclusion appears to be the correct one, the analysis employed by the Court to reach it is not acceptable. Accepting that the statute does not involve a suspect classification or infringe upon a fundamental right, however, it does not necessarily follow that "the statute in question here [is not] blatantly or obviously discriminatory [so] as to make appropriate the application of the 'means scrutiny' test."

The Court cites *Jones v. State Board of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), for the proposition that the statute is not obviously discriminatory, leaving uncertain why the Court deems a discussion of *Jones* necessary or appropriate to a discussion of this case. In *Jones* the statute in question was challenged on both state and federal equal protection grounds. However, in this case the appellant's equal protection challenge is based *only* upon the Fourteenth Amendment to the United States Constitution. Under the Fourteenth Amendment, the "means focus" test, or middle tier of equal protection scrutiny, is given very limited application. It is used when a statute discriminates on the basis of sex, *see Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), and, arguably, when a statute distinguishes between legitimate and illegitimate children. *See Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). Under the Fourteenth Amendment the "more limited review [of the rational basis test] is particularly appropriate in a consideration of economic legislation." The Court notes this in its opinion, citing two *United States Supreme Court* cases. Since the United States Supreme Court would not apply the middle level of scrutiny in this case, it would be inappropriate for this Court to do so, given the fact that the appellant has challenged the statute only on federal equal protection grounds.

The Court's citation to *Jones* may be seen as suggesting that if the statute in question had been (or is on remand) challenged on state equal protection grounds, the Court would apply the rational basis test to determine its validity since the statute is not "blatantly or obviously discriminatory." I am not persuaded that this would be correct.

In *Jones*, which the Court cites as standing for the proposition that the statute *is not* obviously discriminatory, the Court stated this:

"We turn now to consideration of the argument that those portions of the Act limiting recovery in medical malpractice actions create a classification which is discriminatory and in violation of the equal protection clauses of the Fourteenth Amendment and Art. I, § 2 of the Idaho Constitution. The classification which is there created distinguishes between those who are damaged as a result of medical malpractice in amounts exceeding $150,000 as contrasted with others likewise damaged by medical malpractice but whose damages are less than $150,000. Thus, those who are damaged in excess of the statutory limitation are denied full recovery. The standard which is to be used for review here is largely determinative of whether this classification is invidiously discriminatory so as to be prohibited by the guarantees of equal protection.

. . . .

"In the usual and ordinary case where a statutory classification is to be tested in the context of equal protection, judicial policy has been, and continues to be, that the legislation should be upheld so long as its actions can reasonably be said to promote the health, safety and welfare of the public. Nevertheless, where the discriminatory character of a challenged statutory classification is apparent on its face and where there is also a patent indication of a lack of relationship between the classification and the declared purpose of the statute, then a more stringent judicial inquiry is required beyond that mandated by [*McGowan v. Mary-*

land, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393]. That common thread runs through all the cases in which the *Royster* [*v. Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed.2d 989]-*Reed* test has been applied by this Court.

"Here it is apparent from the face of the Act that a discriminatory classification is created based on the degree of injury and damage suffered as a result of medical malpractice. Rather obviously although the Act is said to be designed to insure continued health care to the citizens of Idaho it cannot do other than confer an advantage on doctors and hospitals at the expense of the more seriously injured and damaged persons. . . . We therefore deem it essential that the purposes of the Act and the relationship of the legislatively designed means to accomplish those purposes must be examined." 97 Idaho at 870–71, 555 P.2d at 410–11.

I.C. § 5–241, like the statute considered in *Jones*, appears to be obviously discriminatory. It can only be invoked by an individual who is sued because of "his having performed or furnished the design, planning, supervision or construction of an improvement to real property . . . ." This statute clearly provides protection for architects and contractors (builders), but fails to provide protection for others who might be subject to liability for injuries arising out of an improvement to real property. The statute does not protect materialmen—those who supply the materials that are incorporated into an improvement.[1] In addition, the statute specifically excludes from its protection "any person in actual possession or control [of an improvement], as owner, tenant, or otherwise." Thus, the statute

can be said to be obviously discriminatory because it provides protection for some, but not all, of the people who may be subject to liability for injuries arising out of improvements to real property.

Not only does I.C. § 5–241 discriminate against certain classes of defendants, it discriminates against certain victims as well. The statute cuts off the cause of action in tort against builders which individuals harmed more than eight years following the completion of construction would otherwise have. Individuals injured prior to eight years after completion, however, retain a right of action against builders under the statute. Therefore, I.C. § 5–241, like the statute in *Jones*, obviously discriminates against certain tort victims.[2] The appellants, however, have not challenged the statute on state equal protection grounds, so the "means focus" test applied in *Jones* is not applicable. Thus, while I agree with the Court's conclusion that the rational basis test should be applied under the circumstances of this case, I cannot agree with the Court's analysis in reaching this conclusion.

### III.

After deciding that the standard of review to apply is the rational basis test, the Court holds that I.C. § 5–241 is constitutional. The Court notes that there is a substantial amount of case law on statutes like I.C. § 5–241, and that courts have split almost equally on whether or not such statutes are constitutional. The Court, however, in support of its conclusion states only: "Without extended discussion, it is sufficient to indicate that we agree with those courts who have found the legislative classifications to be valid and based on sufficient differences."

1. An example of materialmen's product liability was recently presented to this Court at the Twin Falls term, in a case in which the materialman's alleged liability was for installation of the allegedly defectively dangerous polyurethane as an insulating material in a potato warehouse.

2. The unfairness of the discriminatory classification of victims in this case is even more evident than it was in *Jones*. Under the statute

in *Jones*, the more severely injured victims could recover up to $150,000. However, under I.C. § 5–241 certain victims—those injured more than eight years following completion of construction—are denied *any* recovery against builders. Although these individuals (as do all other victims) retain a right of action against the owner or occupier of an improvement, if that party is not at fault, the victim will be denied a remedy.

A.

Three major classes of potential defendants exist under I.C. § 5–241. They are: (1) architects and contractors (builders), (2) owners and occupiers, and (3) materialmen. The statute provides protection for the first class—architects and contractors—to the extent that they are essentially immune from liability for injuries arising out of the construction of an improvement to real property when eight years have passed from the date the improvement was completed. Owners and occupiers are specifically denied this protection, and materialmen also would be denied this protection since they are not persons who have "performed or furnished the design, planning, supervision or construction or an improvement to real property ...." I.C. § 5–241.

As noted by the Court, under the rational basis test, a statute must have a legitimate purpose, and the classification created by the statute must be "rationally related to legitimate governmental objectives." In this case, the Court finds legitimate purposes for the statute in that it was enacted as a response to the greatly increased liability sustained by architects and builders since the decline of the common law and that it protects against the litigation of stale claims. The Court notes that "[t]he question then becomes whether there are valid distinctions as between those various groups so as to justify the legislative classification." In my opinion, there are not.

As the Court notes, there is a plethora of authority holding "that such legislative classification [as is contained in I.C. § 5–241] is based on valid distinctions." However, there is also a plethora of authority holding that these legislative classifications are invalid. Furthermore, many of the cases cited by the Court cannot be considered persuasive since they contain the same sort of conclusory reasoning the Court adopts in this case—"[w]ithout extended discussion, it is sufficient to indicate that we agree with those courts which have found the legislative classifications to be valid and based on sufficient differences." [3]

Not all decisions upholding the constitutionality of such statutes have discussed the matter in such summary fashion. In *Howell v. Burk*, 90 N.M. 688, 568 P.2d 214 (N.M.App.1977), the court acknowledged the fact that owners and materialmen, like builders, may be exposed to claims for many years following the completion of a construction project, but distinguished builders, stating:

"The difficulties of those covered by the statute in providing a reasonable defense to a claim made years after the construction was completed, the absence of control of the premises by those covered by the statute, and the historical differences in liability between owners and occupiers of land and those covered by the statute provide a reasonable basis for excluding owners and tenants from the benefits of the statute.

"There is also a reasonable basis for distinguishing between materialmen and persons covered by the statute. That reasonable basis lies in the work performed. 'The manufacturer makes standard goods and develops standard processes. Defects are harder to find in the contractor's special jobs.' ... '[T]he legislature could reasonably have concluded that evidentiary problems facing the architect and contractor are greater than those facing the materialmen.'" 568 P.2d at 220 (citations omitted).

The court in *Howell* therefore concluded that there was a reasonable basis for the legislature's distinction between those covered by the statute and owners, tenants, and materialmen, and held that New Mexico's statute did not violate equal protection.

Another in-depth analysis of the equal protection issue can be found in the case of *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978). In *Freezer*, the court concluded that the Pennsylvania statute was not a special law in violation of the Pennsylvania Constitution because of the distinctions existing between

---

**3.** It is also true that this same sort of conclusory reasoning can be found in some of the cases which have found the classification invalid upon equal protection grounds.

the classes of potential defendants under the statute. The court initially distinguished builders from owners, stating that builders may be liable to a larger class of persons than owners, that builders may be liable, under various theories of liability while the liability of landowners generally lies in tort, and that builders, unlike owners, have no control over their liability following the completion of construction. 382 A.2d at 718. The court then determined that the distinction in the statute between builders and suppliers was based upon "real differences in the business world . . . ." 382 A.2d at 719. The court concluded that it was rational for the legislature to place a limitation on the liability of builders but not suppliers because of the difficult working conditions under which builders must function. In support of this conclusion the court reasoned that suppliers who produce thousands of items "can easily maintain high quality-control standards in the controlled environment of the factory." *Id.* The court found this not to be the case with builders, who face unique problems with every construction project, and who can only pretest designs and construction in limited ways. *Id.*

### B.

The reasoning of courts which have found statutes similar to I.C. § 5–241 to be constitutional is not persuasive. Although I might agree that the differences—historical and practical—justify the exclusion of owners and occupiers from the protection of the statute, the very reasons given to distinguish owners from builders (architects and contractors) also distinguish owners from materialmen.

Like builders, materialmen have been exposed to "greatly increased liability" in recent years. *See* footnote 1, *supra.* While the increase in liability for builders resulted from the abolition of the common law requirement of privity, the increase in liability for materialmen has resulted from the

general development of products liability. Like builders, however, materialmen historically were not subject to liability once the construction of an improvement to real property was completed. Similarly, materialmen, unlike owners and occupiers, have no control over the premises covered by the statute and therefore have no means by which they can control or limit their liability after the completion of construction— such as by limiting the entry of persons upon the property. Like builders, materialmen may be liable under various theories of liability while, the liability of landowners generally is limited to actions based on negligence. Finally, like builders materialmen would have a difficult task defending against stale claims.[4] Thus, clearly, the same reasons that justify distinguishing owners from builders, also justify distinguishing materialmen from owners.

In addition, the reasons generally given to distinguish builders from materialmen are not persuasive. While there are some differences between builders and materialmen, these differences do not justify the legislature's exclusion of materialmen from I.C. § 5–241. Although it might be true that some materialmen are mass-producers who produce thousands of standard goods and can easily maintain quality-control standards, that is not true of *all* materialmen. Nor is it untrue of all architects or contractors. Materialmen might be small producers who make and supply only a dozen products, while architects may make and use standardized designs and contractors may use pre-cut materials in building an improvement to real property. Furthermore, just as the architect has no way to test his design before it is incorporated into an improvement, the materialman often has no way of testing his product. In many cases the materialman can only speculate as to the conditions and stresses to which his product will be exposed. In recognition of the fact that materialmen have been exposed to a similar increase in liability and

---

4. This reason, of course, does not really justify the statutory protection at all, since the burden of proof remains on the plaintiff, who will have an equally difficult task of proving that the builder (and/or materialman) was at fault.

face problems similar to those faced by builders, at least one jurisdiction has enacted a Products Liability Act with protection similar to that granted to builders in I.C. § 5–241. *See* N.D.Cent.Code § 28–01.1–01, *et. seq.* (Supp.1981).

The reasoning of the court in *Skinner v. Anderson*, 38 Ill.2d 455, 231 N.E.2d 588, 590–91 (1967), is persuasive:

> "If, as the defendant suggests, the objective of the statute is to require. that trials of actions based upon defects in construction be held within a relatively short time after the work is completed, that objective is achieved only partially, and in a discriminatory fashion .... 
>
> "[O]f all those whose negligence in connection with the construction of an improvement to real estate might result in damage to property or injury to person more than four years after construction is completed, the statute singles out the architect and the contractor, and grants them immunity. It is not at all inconceivable that the owner or person in control of such an improvement might be held liable for damage or injury that results from a defective condition for which the architect or contractor is in fact responsible. Not only is the owner or person in control given no immunity; the statute takes away his action for indemnity against the architect or contractor.
>
> "The arbitrary quality of the statute clearly appears when we consider that architects and contractors are not the only persons whose negligence in the construction of a building or other improvement may cause damage to property or

injury to persons. If, for example, four years after a building is completed a cornice should fall because the adhesive used was defective, the manufacturer of the adhesive is granted no immunity. And so it is with all others who furnish materials used in constructing the improvement. But if the cornice fell because of defective design or construction for which an architect or contractor was responsible, immunity is granted. It can not be said that the one event is more likely than the other to occur within four years after construction is completed."

Thus, I would hold that there is no difference justifying the distinction made between builders and materialmen in I.C. § 5–241.[5]

### IV.

The Court fails to deal with the appellant's claim that the statute abolishes a cause of action before it accrues, thereby denying access to the courts in certain circumstances. Although I agree with the Court that article I, section 18 of the Idaho Constitution does not prohibit the legislature from abolishing a common law right of action without providing a substitute therefor, I believe that the legislature must act reasonably in doing so.

Under I.C. § 5–241, tort actions which have not previously accrued, "accrue and the applicable limitation statute [begins] to run six (6) years after the final completion of construction of such an improvement." This means that individuals who are injured by an improvement to real property more than eight years after its completion have

---

**5.** As the majority notes, I.C. § 5–241 contains a "limited discovery exception" for the tort liability of builders arising out of the design or construction of improvements to real property. Because such an exception has yet to be created for actions against materialmen, it might be argued that the statute of limitations for materialmen is actually shorter than that for builders, and that therefore the exclusion of materialmen from I.C. § 5–241 is not unreasonable. Such an argument might have merit if I.C. § 5–241 were only a statute of limitations. The statute, however, is also a statute of repose; it grants immunity from all liability to builders eight years after the completion of construction

of an improvement to real property—unless, of course, a builder is guilty of fraudulent concealment, *see* I.C. § 5–219(4), or is barred by estoppel from relying upon I.C. § 5–241. Thus, under I.C. § 5–241 an individual injured more than eight years after the completion of construction would have no cause of action against a builder. *See* part IV, *infra.* Such an individual, however, *would* have a cause of action against the materialmen. Therefore, because materialmen are denied the immunity granted to builders in such cases, without a rational basis for distinguishing between the two groups, the statute is unconstitutional.

no cause of action against those protected by the statute—regardless of the fact that someone protected by the statute might be the only party at fault. Thus, under the statute their cause of action could be abolished before it actually accrues. Such individuals might be left completely without a remedy, even though they would otherwise have had a remedy if their injuries had occurred within eight years following completion of construction.

The rights of individuals injured more than six, but less than eight, years after the completion of construction are also prejudiced. In the ordinary case, as in cases in which an individual is injured within the first six years following completion of construction, an injured person has two years within which to file an action. I.C. §§ 5–219 and 5–241. However, one injured more than six years after the completion of construction has, under I.C. § 5–241, some time less than two years within which to bring an action. In the most extreme case, an injured party would have but a single day within which to file. Not only is this result unreasonable, see Note, Actions Arising Out of Improvements to Real Property: Special Statutes of Limitations, 57 N.D.L. Rev. 43, 70–71 (1981), it is ridiculous. Perhaps in recognition of this fact some statutes similar to I.C. § 5–241 contain a grace period which provides an extension of time for those injured late in the limitation period. E.g., Colo.Rev.Stat. 13–80–127 (Supp. 1981).[6] Under such statutes all individuals whose claims actually accrue within the limitation period have an equal amount of time within which to file suit. This is not the case, however, under I.C. § 5–241 since this statute contains no grace period.

This is not a case in which the legislature has abolished all rights of action for injuries arising out of an improvement to real property. This is a case in which the legislature has classified potential plaintiffs into three distinct categories: (1) those injured less than six years after completion of construction; (2) those between six and eight years after completion of construction; and (3) those injured more than eight years after completion of construction. Those individuals in the first category, like most plaintiffs bringing an action for personal injury, must bring their action within two years of the time of injury. Individuals who fall into the second category will have anywhere between one day and almost two years within which to file their action. Those in the final category, however, have no cause of action whatsoever against builders; in essence, their cause of actions is barred by I.C. § 5–241 before it actually accrues. These distinctions between the classes of potential *plaintiffs* are unreasonable. While it might be argued that every statute of limitations involves a cut-off of rights at some point in time (and the choice of that particular point in time cannot really be justified), an ordinary statute of limitations never cuts off the rights of a plaintiff *before they accrue*. The time limitation contained in an ordinary statute of limitations is therefore justified because it is not unreasonable to require a plaintiff to present a claim within a reasonable time. Fairness demands no less. Such reasoning, however, cannot justify the totally arbitrary classification in I.C. § 5–241, which cuts off the rights of certain individuals before those rights actually accrue and leaves others with as little as one day within which to file an action. Thus, in addition to holding I.C. § 5–241 unconstitutional because it unreasonably classifies defendants, I would hold it unconstitutional because it arbitrarily

---

6. Colo.Rev.Stat. § 13–80–127(1) (Supp.1981) provides that actions against builders must be brought "within two years after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than ten years after the substantial completion of the improvement to real property, except as provided in subsection (2) of this section." Subsection (2) states that "[i]n case any such cause of action arises during the ninth or tenth year after substantial completion of the improvement to real property, said action shall be brought within two years after the date upon which said cause of action arises." A Colorado federal district court has ruled that § 13–80–127 is unconstitutional because it grants immunity from suit to certain classes of defendants without any reasonable basis for the classification. *McClanahan v. American Gilsonite Co.,* 494 F.Supp. 1334 (D.Colo.1980).

classifies plaintiffs as well. The distinctions made between the classes of tort victims under I.C. § 5–241 are even less rational, and are clearly the same type of discrimination which led us to strike down the Medical Malpractice Act in *Jones*. I do not understand the majority's failure to explain the distinction between this case and the economic legislation in *Jones*.