650 P.2d 643

Bradley R. SHEPPARD, dba B. R. Sheppard Co., Claimant-Appellant,

v.

STATE of Idaho, DEPARTMENT OF EMPLOYMENT, Defendant-Respondent.

No. 13737.

Supreme Court of Idaho.

Aug. 26, 1982.

502

Paul S. Street and Gerald T. Husch, Moffatt, Thomas, Barrett & Blanton, Boise, for claimant-appellant.

David H. Leroy, Atty. Gen., Carol L. Brassey, Deputy Atty. Gen., Dept. of Employment, Boise, for defendant-respondent.

SHEPARD, Justice.

This is an appeal from an order of the Industrial Commission holding that the claimant-appellant, Bradley R. Sheppard as a covered employer is required to pay unemployment compensation taxes. We affirm.

The facts are uncontroverted. In the spring of 1979, Sheppard formed a business to install lawn sprinkler systems. The business is seasonal, operating only from April to October of each year. His installations water lawns and shrubbery at residences, golf courses, and commercial establishments. He has done no work in the agricultural or horticultural fields and does not contend that his business falls within the agricultural exemption to unemployment compensation taxation. In May, 1979, Sheppard had three employees, one of which was fired after a week's work, and the remaining two quit in late August to return to college. Total wages during that period were approximately $5800. Respondent State does not dispute Sheppard's contention that his employees were "always" students.

This controversy began when the Department of Employment issued a determination that Sheppard was subject to unemployment insurance reporting. Sheppard appealed to a hearing examiner and, receiving an adverse decision, appealed to the Industrial Commission, which affirmed Sheppard's liability. This appeal follows. From the outset Sheppard has asserted that although his business does not fall within the agricultural exemption to unemployment compensation taxes, nevertheless his business is similar to agriculture and therefore should be exempt.

I.C. Title 72, Chap. 13 (the Employment Security Law), is a comprehensive legislative plan establishing eligibility for unemployment compensation and collecting taxes to defray the costs. Overly simplified, it defines "covered employers", I.C. § 72–1315, who are required to make "contributions", I.C. § 72–1314, to the employment security fund, I.C. §§ 72–1345 to –1353. Claimants who meet eligibility requirements are then paid from the funds. I.C. §§ 72–1365 to –1370. The act provides numerous exemptions from "covered employers", and employees of exempt employers are not eligible for benefits. I.C. § 72–1367.

At the outset Sheppard asserts that requiring him as a "covered employer" to pay unemployment compensation taxes violates the constitutional equal protection rights of his employees. He argues that absent those taxes, his employees would receive a higher wage, that because of the employees' status, they can never receive benefits, and hence there is a resultant discrimination. Respondent State asserts Sheppard has no standing to maintain such an argument. We agree.

There is no indication in the record that Sheppard's employees do or would seek to have the business exempted from unemployment compensation taxes. Employees are not parties to this action and we have been cited to no case in which an employee sought to have his employer exempted from the payment of unemployment compensation taxes. Prior cases generally involve employees arguing against unemployment compensation tax exemptions granted to their employer. *See Florek v. Sparks Flying Service, Inc.,* 83 Idaho 160, 359 P.2d 511 (1961) (agricultural exemption); *Romero v. Hodgson,* 319 F.Supp. 1201 (N.D.Cal.1970), *aff'd,* 403 U.S. 901, 91 S.Ct. 2215, 29 L.Ed.2d 678 (1971) (agricultural exemption); *Doe v. Hodgson,* 478 F.2d 537 (2d Cir.), *cert. de-*

*nied,* 414 U.S. 1096, 94 S.Ct. 732, 38 L.Ed.2d 555 (1973) (agricultural exemption); *Fisher v. Secretary of United States Dep't of Health, Education and Welfare,* 522 F.2d 493 (7th Cir. 1975) (domestic workers' exemption); *Von Stauffenberg v. Dist. Unemployment Compensation Bd.,* 459 F.2d 1128 (D.C.Cir.1972) (religious and charitable exemption). *But cf. Department of Employment v. Champion Bake-N-Serve,* 100 Idaho 53, 592 P.2d 1370 (1979).

Sheppard argues that the cases of *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), and similar cases, support his argument that he has standing to assert the constitutional rights of his employees. We disagree. In *Craig,* a beer vendor was held to have standing to assert the constitutional rights of 18-to-21 year old males who wanted to but were denied the right to buy beer. In *Singleton,* doctors were held to have standing to assert the constitutional rights of their patients who were denied medicaid funds for abortions. The Court held in those cases that the interests of the parties to the lawsuit and third parties whose constitutional rights were being raised, were virtually identical. In the instant case, the interests of Sheppard and his employees do not necessarily so coincide, since if Sheppard were to prevail, his employees might be denied unemployment benefits for which they might be eligible if otherwise qualified.

As stated by the Court in *Craig:*

"[O]ur decisions have settled that limitations on a litigant's assertion of *jus tertii* are not constitutionally mandated, but rather stem from a salutary 'rule of self-restraint' designed to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative." 429 U.S. at 193, 97 S.Ct. at 455.

We deem Sheppard's assertion of the constitutional rights of his employees too speculative to be raised here. Our holding today is limited to whether the exemptions violate the constitutional rights of a "covered employer" and we do not touch or pass upon the rights of the employees to bring their own suit challenging inclusion or exclusion from unemployment compensation benefits. *Cf. State v. Goodrick,* 102 Idaho 811, 641 P.2d 998 (1982). As to actions by employees challenging the agricultural exemption in the context of unemployment compensation, *see Florek v. Sparks Flying Service, supra; Romero v. Hodgson, supra; Doe v. Hodgson, supra.* As to cases involving the agricultural exemption in the context of workmen's compensation, *compare Gutierrez v. Glaser Crandell Co.,* 388 Mich. 654, 202 N.W.2d 786, 787 (1972); and *Benson v. North Dakota Workmen's Comp. Bureau,* 283 N.W.2d 96 (N.D.1979) *with State ex rel. Hammond v. Hager,* 160 Mont. 391, 503 P.2d 52 (1972), *appeal dismissed,* 411 U.S. 912, 93 S.Ct. 1548, 36 L.Ed.2d 303 (1973); *Otto v. Hahn,* 209 Neb. 114, 306 N.W.2d 587 (1981); and *Cueto v. Stahmann Farms, Inc.,* 94 N.M. 223, 608 P.2d 535 (1980).

We now turn to Sheppard's assertion that he individually is denied equal protection under the provisions of both the Fourteenth Amendment to the United States Constitution, and the Idaho Constitution, Art. 1, § 2. There is no contention that this case involves either a fundamental right or a suspect classification so as to trigger the strict scrutiny test. *Twin Falls Clinic v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982); *Idaho Quarterhorse Breeders Ass'n, Inc. v. Ada County Fair Board,* 101 Idaho 339, 612 P.2d 1186 (1980). Sheppard asserts that while his equal protection argument under the Fourteenth Amendment to the United States Constitution is to be measured by the traditional rational basis test, nevertheless, Idaho's equal protection guarantee, Idaho Const., Art. 1, § 2, establishes a middle tier level of scrutiny falling between the rational basis and the strict scrutiny tests. To a limited extent, we agree.

The means-focus test as enunciated by this Court in *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977), establishes a standard of review under Idaho's equal protection guar-

antee, separate, distinct, and to be applied independently of the standards applied under the Fourteenth Amendment to the United States Constitution. We note other courts which have imposed a stricter standard of review under a state constitution as contrasted with the two tier analysis of the United States Supreme Court of the Fourteenth Amendment to the United States Constitution. *See e.g., Commercial Fisheries Entry Comm'n v. Apokedak,* 606 P.2d 1255 (Alaska 1980); *DeRonde v. Regents of University of California,* 28 Cal.3d 875, 172 Cal.Rptr. 677, 625 P.2d 220 (1981), *cert. denied,* 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110 (1981); *Taxpayers Ass'n of Weymouth Township, Inc. v. Weymouth Township,* 80 N.J. 6, 364 A.2d 1016 (1976), *appeal dismissed,* 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977); *Benson v. North Dakota Workmen's Comp. Bureau,* 283 N.W.2d 96 (N.D.1979). *See also City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (questioning the continuing validity of the standard of review enunciated in *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), and *Royster Guano Co. v. Virginia,* 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920), but suggesting that Texas could require the imposition of such a standard). *See generally* H. Linde, *First Things First: Rediscovering the States' Bills of Rights,* 9 U.Balt.L.Rev. 379 (1980). However, for the reasons outlined below, we hold that the means-focus test is inappropriate under the facts of this case.

■ This Court has long deferred to legislative decisions regarding classifications for taxes and their exemptions. *Justus v. Board of Equalization of Kootenai County,* 101 Idaho 743, 620 P.2d 777 (1980); *School Dist. No. 25 v. State Tax Comm'n,* 101 Idaho 283, 612 P.2d 126 (1980); *Evans v. Idaho State Tax Comm'n,* 95 Idaho 54, 501 P.2d 1054 (1972); *Leonardson v. Moon,* 92 Idaho 796, 451 P.2d 542 (1969); *Williams v. Baldridge,* 48 Idaho 618, 284 P. 203 (1930). The courts of other jurisdictions are similarly deferential. *E.g., Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); *Wesley*

*Medical Center v. McCain,* 226 Kan. 263, 597 P.2d 1088 (1979); *Michael J. Maloof & Co. v. Bureau of Revenue,* 80 N.M. 485, 458 P.2d 89 (1969); *Oil Heat Institute of Washington v. Town of Mukilteo,* 81 Wash.2d 7, 498 P.2d 864 (1972). We are cited to no reasons deemed sufficient to change or discontinue our policy of judicial deference to legislative acts and decisions regarding taxation. If a tax measure were to infringe upon equal protection by the creation of a suspect classification or infringement upon a fundamental right, such might well justify the application of the strict scrutiny test, *Harper v. Virginia Board of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 164 (1966) (state poll tax held unconstitutional), but in other classifications for tax purposes, we deem the rational basis test appropriate under both the state and federal constitutional equal protection provisions.

■ As to the application of the rational basis standard, *see Twin Falls Clinic v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982). *See also Western & Southern Life Ins. Co. v. State Board of Equalization,* 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981); *Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981). Sheppard does not argue that the agricultural exemption is invalid. Hence we are not faced with the validity of that exemption as upheld in *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937). Sheppard only asserts that he should also be exempt. Hence, we deem the sole question presented is whether it was reasonable for the legislature to exempt agricultural employers, but not exempt seasonal lawn sprinkler installation employers.

The express legislative purpose of Idaho's employment security law is stated in I.C. § 72–1302(a):

"As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is

therefore a subject of national and state interest and concern which requires appropriate action to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that, in its considered judgment, the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, and for the compulsory setting aside of unemployment reserves to be used for the benefits of persons unemployed through no fault of their own."

In essence, that purpose is to encourage more stable employment and to accumulate funds for the payment of benefits to the unemployed. Here the legislature may reasonably have determined that agricultural employment is inherently more unstable than non-agricultural employment and hence directed its efforts toward the non-agricultural market as being more likely to succeed while opting to deal with the agricultural labor market at a later time. As stated in *Evans v. Idaho State Tax Commission,* 95 Idaho 54, 58, 501 P.2d 1054, 1058 (1972), *quoting State v. Cantrell,* 94 Idaho 653, 656, 496 P.2d 276, 279 (1972):

"Acceptance of under-inclusion is justified on practical grounds when the legislature, exercising the police power, must be free to remedy parts of a problem, or to recognize degrees of a problem and to formulate solutions in the areas it determines to be more in need or more readily corrected than others."

*See also* 1977 Idaho Sess.Laws, Ch. 179, p. 466 (including larger agricultural employers in the unemployment taxation scheme).

We need not agree that the legislative determination to limit exemptions from the unemployment compensation tax was the best exercise of its wisdom, but we defer to its judgment absent a classification for which there is no rational basis. In a somewhat different context, it was noted:

"When the legislature chooses to inaugurate a reform as sweeping as that which is represented by unemployment compensation, it is often forced to make compromises which, whether in the name of politics or economy, are often impossible of explanation in strictly legal terms. Realizing this, the Courts have refused to require that the State remedy all aspects of a particular mischief or none at all.... Hence the exclusion of agriculture from unemployment compensation can be seen as an indirect subsidy of a ' "beneficent enterprise" ', or as an effort to save the compensation fund from the drain which would result from the inclusion of another large ' "deficit industry" ', or even as a necessary political compromise without which it would have been impossible to inaugurate a most important reform in American institutions. Whether all of this is good policy is of course not the question before us. We can only ask if these justifications are rational by the loose standards of *Carmichael, Steward Machine* [*Co. v. Davis,* 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279], and *Dandridge* [*v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491], cit. *supra.* We conclude that they are." (citations omitted)

*Romero v. Hodgson,* 319 F.Supp. 1201, 1203 (N.D.Cal.1970), aff'd., 403 U.S. 901, 91 S.Ct. 2215, 29 L.Ed.2d 678 (1971).

■ Finally, Sheppard argues that the imposition of the unemployment compensation tax upon him is arbitrary since neither he nor his employees receive any benefit therefrom. We note first that as a citizen and taxpayer, indirect benefits are received from increasing the stability of the employer-employee climate throughout the state, as well as a reduced strain on the welfare

**506**

system. *See* I.C. § 72–1302. But even assuming his assertion to be correct, employers are rated as to the number of their employees who receive fewest unemployment benefits. I.C. §§ 72–1350 and 72–1351. Hence, there is an attempt at least to require employers who are most responsible for involuntary unemployment to bear a higher burden of the cost. The fit need not be perfect, and the legislative scheme "does not offend the constitution simply because it is not made with mathematical nicety or because in practice it results in some inequality." *School Dist. No. 25 v. State Tax Comm'n,* 101 Idaho 283, 288, 612 P.2d 126, 131 (1980). *Accord Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). As was stated in *Carmichael v. Southern Coal & Coke Co.:*

> "Nothing· is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied." (footnote omitted).

301 U.S. at 521–22, 57 S.Ct. at 878. *Accord Wesley Medical Center v. McCain,* 226 Kan. 263, 597 P.2d 1088 (1979).

We find no denial of equal protection under either the state or federal constitutions, and hence, the order of the Industrial Commission is affirmed. Costs to respondent.

BAKES, C. J., and McFADDEN, BISTLINE and DONALDSON, JJ., concur.